73 A.3d 478

DARNICE GREEN, MATHEW BLUMBERG, MICHAEL PERMEN-
TER AND BETH PERMENTER, INDIVIDUALLY AND AS
CLASS REPRESENTATIVES ON BEHALF OF OTHERS SIMI-
LARLY SITUATED, PLAINTIFFS–RESPONDENTS, v. MORGAN
PROPERTIES, MORGAN MANAGEMENT, MITCHELL L. MOR-
GAN, INC., ROSEMARY SPOHN, ESQUIRE, EAST COAST THE
WILLOWS, LLC, EAST COAST COLONIAL APARTMENTS,
LLC, DEFENDANTS–APPELLANTS.

Argued March 12, 2013—Decided September 17, 2013.

432

434

*Stephen M. Orlofsky* argued the cause for appellants (*Blank Rome,* attorneys; *Mr. Orlofsky* and *David C. Kistler,* on the briefs).

*Lewis G. Adler* argued the cause for respondents.

*Charles X. Gormally* argued the cause for *amicus curiae* New Jersey Apartment Association (*Brach Eichler,* attorneys; *Mr. Gormally, Sean A. Smith,* and *Thomas Kamvosoulis,* on the briefs).

Justice HOENS delivered the opinion of the Court.

Plaintiffs Darnice Green, Mathew Blumberg, Michael Permenter and Beth Permenter assert that they were tenants in various apartment complexes that are owned by defendants East Coast the Willows, LLC, and East Coast Colonial Apartments, LLC, and

that are managed or operated by defendants Morgan Properties, Morgan Management, and Mitchell L. Morgan, Inc. Plaintiffs further assert that they were each the subject of an action to evict them from their apartments for non-payment of rent and that, in order to avoid eviction, they were required to pay attorneys' fees in amounts fixed by a provision in their apartment leases.

Believing that the attorneys' fees that were included in their leases and that they were required to pay to avoid eviction were unreasonable, plaintiffs initiated litigation in the Superior Court, both individually and as representatives of a class of similarly situated tenants, seeking recovery from the corporate defendants and from their in-house counsel, defendant Rosemary Spohn, Esq. In general, plaintiffs' complaint alleged that the corporate defendants own or manage 131 apartment communities comprising more than 30,000 rental units in ten states, including New Jersey. They further assert that the lease provisions, which demand payment of $400 in attorneys' fees for the filing of an eviction action as to which a court appearance is required and payment of $200 if the matter is resolved without a court appearance, are unreasonable. They contend that because defendants file an average of 200 eviction complaints each month in Camden County alone, and because all of the evictions are handled by the in-house attorney, the fees are excessive when compared to the actual attorneys' fees that the corporate defendants incur.

Plaintiffs' complaint included three separate counts. First, they asserted that the eviction complaints violated the Anti–Eviction Act, *N.J.S.A.* 2A:18–61.1 to –61.12, because defendants misrepresented that plaintiffs would be evicted if the attorneys' fees were not paid. Second, plaintiffs asserted that they were entitled to relief pursuant to the Consumer Fraud Act (CFA), *N.J.S.A.* 56:8–1 to –20, because the attorneys' fees provisions in the leases constituted an unconscionable business practice and because they can demonstrate that they have suffered an ascertainable loss. Third, plaintiffs allege that defendants are liable to them for negligently

misrepresenting the true amount of attorneys' fees incurred in the eviction proceedings.

The defendants collectively filed a motion in lieu of an answer, seeking the dismissal of the complaint for failure to state a claim upon which relief may be granted. *See R.* 4:6–2(e). Following oral argument, that motion was granted by the trial court and the complaint was dismissed with prejudice.

Thereafter, the Appellate Division, relying on the well-established standard that governs motions to dismiss for failure to state a claim, *see Printing Mart–Morristown v. Sharp Elecs. Corp.,* 116 *N.J.* 739, 746, 563 *A.*2d 31 (1989), determined that the trial court had erred. In summary, the appellate panel concluded that the first count alleging unlawful eviction should have been dismissed without prejudice so as to permit plaintiffs to better articulate the elements of their claim, but that the second and third counts sufficiently set forth the elements of consumer fraud and negligence and that they should be permitted to proceed.

This dispute, which comes before us by way of defendants' petition for certification, requires that we analyze the purpose of including provisions fixing attorneys' fees in lease agreements, the manner in which such fees are to be tested for reasonableness, and the sufficiency of plaintiffs' pleading as it relates to the claims against the corporate and individual defendants for consumer fraud and negligence.

I.

This appeal has its origins in several eviction proceedings emanating from two apartment communities, The Willows (Willows), which is located in Barrington, and East Coast Colonial Apartments (Colonial), which is located in Cherry Hill. At the time when the complaint was filed, Darnice Green was a tenant at Willows, Michael and Beth Permenter were tenants at Colonial, and Mathew Blumberg was a former Colonial tenant.

Three of the corporate defendants, Morgan Properties, Morgan Management, and Mitchell L. Morgan, Inc., are Delaware corporations with principal places of business in Pennsylvania. According to the complaint, they manage 131 apartment communities in ten different states. The other corporate defendants, East Coast the Willows, LLC, and East Coast Colonial Apartments, LLC, own the two apartment complexes located in New Jersey that are relevant to this dispute. The individual defendant, Rosemary Spohn, is a New Jersey attorney who serves as a salaried in-house counsel for Morgan Properties. As part of her work, Spohn handles landlord-tenant disputes, including eviction proceedings, for the apartment communities owned or managed by Morgan Properties throughout New Jersey.

Although the complaint is lacking in detail, each of the plaintiffs was a party to a lease that included a provision requiring payment of attorneys' fees in the event that the tenant failed to pay rent when due and the landlord took action as a result. Each of the original leases signed by plaintiffs included the following terms relating to attorneys' fees that would be due in those circumstances:

> If Tenant fails to pay the entire amount of rent due and owing, and the services of an attorney are thereby required to resolve the matter, either by court appearance, preparation of a consent to be filed with the court or for any other purpose, then a reasonable attorney's fee of four hundred dollars ($400.00) is due and payable as additional rent by the Tenant. If the attorney's fee exceeds four hundred dollars ($400.00) then the Tenant will be required to pay the entire amount of reasonable attorney's fees due and owing to the attorney. In the event Tenant receives a Summons and Complaint and pays all rent due, including late charges and a legal fee of two hundred dollars ($200.00), by certified check or money order prior to the court date so that Landlord's attorney is not required to make an appearance on behalf of the Landlord, Tenant shall not be liable for the remaining two hundred dollars ($200.00) legal fee. However, the four hundred dollars ($400.00) attorney's fee is due and owing even if Tenant makes full payment on the day of the court appearance, because the attorney will be required to make an appearance on behalf of Landlord.

Plaintiffs Green and the Permenters executed new versions of the lease in 2010 that contained an alteration in the provision relating to attorneys' fees. The 2010 leases provided:

If the Landlord uses the services of an attorney (including in-house counsel) for any good cause in relation to the enforcement or defense of any terms of this Lease, or in any relation to this tenancy, whether or not litigation is commenced, Resident must pay Landlord's attorney fees in the amount of four hundred dollars ($400) plus costs as Additional Rent for each cause in which the attorney's services are engaged.

It is alleged that eviction actions were brought against each of the plaintiffs for non-payment of rent and that the resolution of those complaints required plaintiffs to pay attorneys' fees as set forth in the leases in order to avoid eviction.[1]

On August 19, 2010, plaintiffs filed a complaint against defendants in the Superior Court, Law Division, alleging unlawful eviction proceedings, *N.J.S.A.* 2A:18–61.6 (Count One), violations of the CFA, *N.J.S.A.* 56:8–1 to –20 (Count Two), and negligence (Count Three). In addition, although not separately denominated as a count demanding relief, the complaint also referred to a violation of ethical rules prohibiting lawyers from sharing fees with non-lawyers.

The complaint drew no distinctions between the claims made as against the corporate and individual defendants,[2] but it appears that each claim was based on the assertion that the imposition of attorneys' fees when the corporate defendants were represented by in-house counsel was unlawful or unconscionable because the fees exceeded the actual costs of legal representation and constituted prohibited fee-sharing with non-lawyers.

---

[1] Because the dates of the eviction proceedings are not specified in the complaint or otherwise revealed in the record, it is not entirely clear which of the attorneys' fee provisions was involved in those proceedings. Although the date on which the complaint in this matter was filed suggests that the eviction proceedings were based on the two-tiered attorneys' fee provision found in the original leases, to the extent relevant to our analysis of the dispute, we address the implications of both the original and the 2010 lease terms.

[2] Plaintiffs filed an affidavit of merit, *N.J.S.A.* 2A:53A–27, presumably in support of a professional negligence claim, that similarly made no distinction between the corporate and individual defendants. Instead, it merely opined that all of the defendants failed to act in accordance with "acceptable professional standards of an attorney and client[.]"

Defendants responded to the complaint by filing a motion to dismiss for failure to state a claim upon which relief may be granted. *See R.* 4:6–2(e). In large measure, defendants' motion was based on their assertion that the attorneys' fee provision included in the leases was a form of liquidated damages and represented a reasonable estimate of the attorneys' fees that the corporate defendants would incur in the event that they were required to pursue eviction proceedings. Defendants further argued that, unless plaintiffs could demonstrate that the amount of the fees was unreasonable, it was an enforceable term of the lease.

With those assertions as the backdrop, the corporate defendants argued that there could be no claim for wrongful eviction because plaintiffs were only served with complaints for eviction rather than with orders to evict; that there could be no claim for CFA relief because there was no unconscionable act; and that there could be no negligent misrepresentation claim because there had been no misrepresentation to plaintiffs. The individual defendant argued that she could not be liable for wrongful eviction because she did not own the premises; that she could not be liable under the CFA because the corporation, and not she, was the signatory to the leases; and that she could not be liable to plaintiffs for malpractice both because there was an absence of an attorney-client relationship and because the complaint's reference to ethical violations could not support such a cause of action.

Plaintiffs argued that awards of counsel fees are subject to the supervision of the court, even when included in a contract; that the court was charged with determining whether the fees included in the leases were reasonable; that the corporate defendants should not be permitted to recover fees at all because they used the services of in-house counsel; that the fees fixed by the leases were excessive when compared to the actual costs of having the in-house attorney attend to the eviction matters; and that the fees were prohibited by the ethical rule governing fee-sharing with non-lawyers. Plaintiffs therefore asserted that they had sufficiently set forth in their pleading facts and allegations that would

support relief pursuant to the Anti–Eviction Act, the CFA, and based on their negligence theory. In the alternative, they requested that any dismissal of their complaint be without prejudice.

The trial court, after hearing from the parties, concluded that it was plaintiffs' burden to establish that the fees were unreasonable, agreeing with defendants that the fees were a form of liquidated damages because of their inclusion in the leases. The court therefore rejected plaintiffs' assertion that defendants should be required to demonstrate that the fees were reasonable through the submission of a certification of services. As to the reasonableness of the fees set forth in the leases, the trial court referred to a general awareness of the work that is associated with a summary dispossess action and pronounced the fees to be reasonable. As a result, the court granted the motion to dismiss Count One, concluding that there was no ground on which plaintiffs could demonstrate a violation of the Anti–Eviction Act.

Turning to the second count in the complaint, in which plaintiffs sought to recover pursuant to the CFA, the trial court rejected plaintiffs' arguments that only a fee that would be payable to an outside law firm can be included in the lease as additional rent, and that the fee included in the lease was unlawful because it was an unethical fee-sharing arrangement. Instead, having concluded that the attorneys' fee provision in the lease was both reasonable and agreed upon by the parties, the trial court dismissed the CFA claim as well.

Finally, the trial court considered the negligence count, dismissing it summarily with the observation that plaintiffs had failed to identify any act that was arguably a misrepresentation. Finding that plaintiffs had raised no other factual assertion that would create a claim on which relief could be granted, the trial court concluded that it did not need to permit plaintiffs an opportunity to amend their pleading and dismissed the complaint with prejudice.

The Appellate Division, in an unpublished opinion, reversed the trial court's order, remanding the matter for reinstatement of both

Count Two, which sought relief pursuant to the CFA, and Count Three, which asserted a claim for negligent misrepresentation, and directing that the dismissal of Count One be converted into a dismissal without prejudice.

Addressing Count One, the panel concluded that the complaint "failed to allege an essential element" because plaintiffs had not "vacated their apartments in the face of an unlawful eviction." [3] Notwithstanding that shortcoming, the appellate court directed that the dismissal be converted to one without prejudice in order to afford plaintiffs an opportunity to file an amended pleading.

Furthermore, the Appellate Division found that plaintiffs alleged sufficient facts to support claims based on violations of the CFA and for negligent misrepresentation. Applying the liberal standard that is applied to motions for dismissal pursuant to *Rule* 4:6–2(e), *see Printing Mart–Morristown, supra,* 116 *N.J.* at 746, 563 *A.*2d 31, the appellate panel found that the complaint asserted CFA and negligent misrepresentation claims by alleging that "the landlords have imposed charges on their tenants, denominated as attorney's fees, that exceed the landlords' actual cost for in-house legal representation."

As part of its analysis, the Appellate Division rejected defendants' argument that the attorneys' fee provision should be sustained because it was a liquidated damages clause. That conclusion was based in part on the panel's recognition that, although the party seeking an attorney's fee bears the burden of proving the reasonableness of the fee, a true liquidated damages clause is presumptively reasonable. That being so, the panel concluded that it would be inappropriate to regard the clause as if it

---

[3] It is not entirely clear that plaintiffs intended Count One to assert the claim articulated by the Appellate Division but, because plaintiffs did not file a cross-petition for certification, *see R.* 2:12–3(b), we need not consider further the sufficiency of the claim raised in Count One. Rather, in light of the Appellate Division's directive that Count One be dismissed without prejudice, we leave it to plaintiffs to more specifically set forth their claim if they are able to do so.

represented liquidated damages because of the consequential shift in the burden of proof.

Giving the CFA and negligence counts the indulgent reading demanded by *Rule* 4:6–2(e), and observing that plaintiffs had alleged that defendants charged legal fees higher than they incurred and engaged in prohibited fee-sharing between in-house counsel and the corporations, the appellate court concluded that those allegations were sufficient to withstand the motion to dismiss. Significant to this appeal, the appellate panel commented only briefly as to its reasons for reinstating the claims against the individual defendant. In essence, the panel referred to the indulgent standard applicable to motions to dismiss and commented that it declined to view the individual defendant's role as having been limited to serving as trial counsel for the corporate defendants.

We granted defendants' petition for certification, 210 *N.J.* 27, 40 *A.*3d 57 (2012), and we thereafter granted permission to the New Jersey Apartment Association (NJAA) to participate in this appeal as an amicus curiae.

II.

Defendants primarily argue that this Court should read the attorneys' fee provisions in the leases as a form of liquidated damages clause. Moreover, they assert that we should confirm that, when included in a residential lease, such provisions are both enforceable and presumptively reasonable.

More specifically, defendants argue that the appellate court erred in three respects. First, they assert that the Appellate Division erred by precluding them from assessing an attorney's fee in a lease in a fixed, liquidated amount. They argue that this Court has expressly authorized the inclusion of an attorneys' fee provision in a residential lease and has expressly permitted it to be characterized as a form of additional rent. Moreover, they assert that the fee in the lease is a "pre-negotiated attorneys' fee," that it therefore should have been regarded by the Appellate

Division as presumptively valid, and that the panel erred in failing to require plaintiffs to bear the burden of proving that it is unreasonable.

Second, defendants argue that the Appellate Division erred in concluding that an in-house attorney and her employer could be liable to the tenant based on an assertion that they engaged in impermissible fee-sharing. *See RPC* 5.4(a). In defendants' view, because the *Rules of Professional Conduct* do not apply to the corporate defendants, the appellate court erred in considering whether the fee in the lease might create a profit for the corporation that might be an inappropriate fee-sharing arrangement with the in-house attorney. Further, they argue that, although the individual defendant is subject to the ethical rules, the panel erred by implying that a violation of those rules could give rise to a cause of action in favor of plaintiffs.

Third, defendants assert that there can be no cause of action against either the corporate defendants or the individual defendant for fraud or misrepresentation. Focusing in particular on the potential claim against the individual defendant, they assert that the Appellate Division erred in concluding that the in-house attorney could be individually liable to the tenants for the work she performed for her employer in connection with summary dispossess proceedings. Pointing to the brevity of the panel's comments about the claims against the individual defendant, defendants warn that it sets a dangerous precedent by exceeding the limited grounds for such claims set by this Court and by exposing attorneys to "specious third-party claims." In summary, defendants urge us to reverse the judgment of the appellate panel to the extent that it reinstated the claims plaintiffs raised in Counts Two and Three of the complaint.

Plaintiffs urge us to affirm the judgment of the Appellate Division. First, they argue that the attorneys' fee provision in the lease was not an enforceable liquidated damages clause and that its inclusion in the pre-printed form did not relieve the trial court of the obligation to test its reasonableness. Asserting that the

lease was a contract of adhesion, plaintiffs argue that the clause should be strictly construed against defendants and that defendants should not be permitted to avoid being required to prove its reasonableness. Moreover, plaintiffs assert that the provision is not a liquidated damages clause under any circumstance. They point to the use of two tiers of fees depending upon whether or not a court appearance is required and to the fact that the clause permits the landlord to recoup the full fee charged by counsel in the event that the work performed on the matter is such that the actual fee exceeds the $400 fee utilized in the lease as evidence that the clause is not a true liquidated damages clause.

Second, plaintiffs assert that, in evaluating reasonableness, the court should have been bound by the ordinary rules governing attorneys' fees, *see RPC* 1.5, and that the court's failure to apply those factors justified the appellate court's decision to reverse the dismissal and reinstate the complaint.

Third, plaintiffs assert that they adequately set forth the factual basis for their claim that defendants violated the CFA. In short, they assert that because the corporate defendants do not pay the individual defendant the fees set forth in the lease, charging plaintiffs those sums is both a misrepresentation and improper fee-sharing.

Finally, plaintiffs argue that they are permitted to maintain a direct cause of action against the individual defendant because they were invited to rely on her statements, which suffices to create a duty to them in the absence of an attorney-client relationship.

Amicus curiae NJAA primarily argues that the Appellate Division failed to follow well-settled precedent, pointing out that tenants can contractually agree to pay reasonable legal fees related to an eviction. NJAA contends that the trial court was correct in concluding that the $400/$200 provision is a reasonable liquidated damages provision and that the Appellate Division's decision has created uncertainty in the landlord-tenant market in

New Jersey by encouraging tenants to raise arguments about attorneys' fees that are plainly reasonable.

Second, NJAA urges us to reject the Appellate Division's fee-sharing analysis, contending that if the panel had analyzed the attorneys' fee provision as a form of liquidated damages, it would have recognized that the fee-sharing argument was irrelevant. Moreover, NJAA predicts that, because the panel adopted the fee-sharing analysis, landlords will be dissuaded from using in-house counsel to handle eviction matters, thereby increasing costs that inevitably will be passed on to tenants.

Finally, NJAA suggests that sound public policy militates in favor of reversing the Appellate Division, warning that, if affirmed, its decision will result in separate trials on counsel fees in every summary dispossess proceeding, thus burdening the court system.

## III.

Our consideration of the issues begins with the recognition that this dispute must be understood in the context of its origins in landlord/tenant law. Although we need not reiterate the history surrounding the passage of the Anti–Eviction Act, we have explained that the Legislature set forth its essential purpose when the statute was enacted. *See A.P. Dev. Corp. v. Band,* 113 *N.J.* 485, 492–93, 550 *A.*2d 1220 (1988) (explaining purposes and quoting relevant legislative history of statute). As the Legislature's sponsoring statement noted, "[t]his Act shall limit the eviction of tenants by landlords to reasonable grounds and provide that suitable notice shall be given to tenants when an action for eviction is instituted[.]" *Id.* at 492, 550 *A.*2d 1220 (quoting Sponsor's Statement to Assemb. No. 1586, enacted as *L.* 1974, *c.* 49).

As a result, the Act protects residential tenants from unreasonable evictions by setting forth the bases on which and the manner in which a tenant may be evicted. *N.J.S.A.* 2A:18–61.1. In order to effectuate the Legislature's purposes, we have ensured that the procedures utilized in eviction proceedings are adequate to protect the rights of tenants, including those who are not represented by

counsel. *See Cmty. Realty Mgmt., Inc. v. Harris,* 155 *N.J.* 212, 240–43, 714 *A.*2d 282 (1998) (establishing procedures designed to inform tenants of rights and remedies).

At the same time, the Act also protects landlords by providing an efficient and inexpensive way to evict a tenant and regain possession of the leased premises when appropriate. Part of the analysis of whether an eviction is permitted rests on the Act's requirement that the summary dispossess action be based on one of the established jurisdictional grounds, referred to as "good cause[s]" by the Act. *N.J.S.A.* 2A:18–61.1; *accord Harris, supra,* 155 *N.J.* at 239, 714 *A.*2d 282; *see Marini v. Ireland,* 56 *N.J.* 130, 138, 265 *A.*2d 526 (1970) (explaining concept of jurisdictional basis for tenant's removal).

As we have explained, "the clear purpose and spirit of the Anti–Eviction Act [is] to ensure that evictions are based on 'reasonable grounds[.]'" *447 Assocs. v. Miranda,* 115 *N.J.* 522, 529, 559 *A.*2d 1362 (1989). In explaining that focus of the Act, we have recognized that, absent demonstration of one of the statutory "good cause" bases for their removal, the Act "establish[es] tenants' rights to continued occupancy of their rental dwellings[.]" *Ibid.* And we have observed that because the Act is remedial legislation, it is to be liberally construed to effect its purposes. *A.P. Dev. Corp., supra,* 113 *N.J.* at 506, 550 *A.*2d 1220.

We have, therefore, declined to permit an eviction based on a landlord's unilateral change to a lease in the absence of an opportunity for the tenant to challenge the reasonableness of that change. *447 Assocs., supra,* 115 *N.J.* at 529–31, 559 *A.*2d 1362. Moreover, we have concluded that, in order to be consistent with the "Act's general emphasis on reasonableness," *id.* at 531, 559 *A.*2d 1362, and the overall requirement that the landlord demonstrate reasonableness in a summary dispossess proceeding, the burden of proving the reasonableness of the change to the lease terms also falls upon the landlord and not upon the tenant, *ibid.*

Our Landlord/Tenant Part operates as a court of limited jurisdiction, where, through the mechanism of a summary dispossess

action, *see R.* 6:3–4 (establishing summary action for possession of premises), the parties to an eviction proceeding may be assured of the protections of the Anti–Eviction Act in an efficient and cost-effective forum, *see Hous. Auth. v. Little,* 135 *N.J.* 274, 280, 639 *A.*2d 286 (1994) (explaining that purpose of summary dispossess proceeding was to create expedited procedure in place of common law ejectment action); *accord Hous. Auth. v. West,* 69 *N.J.* 293, 300–01, 354 *A.*2d 65 (1976).

Streamlined procedures, readily available, pre-printed forms that landlords may use to file eviction complaints and seek to regain possession of the premises, reduced filing fees, easy-to-understand written explanations of the procedures available to both landlords and tenants, and verbal explanations of parties' rights and of the relevant procedures that are provided by the trial court at the commencement of the calendar call in the Landlord/Tenant Part, *see* Landlord/Tenant Pre–Calendar Call Instructions, Pressler & Verniero, *Current N.J. Court Rules,* Appendix XI–S to *R.* 6:5–2(b) at 2640–42 (2013), all serve to ensure that parties, particularly those appearing without attorneys, are apprised of their rights.

One of the principal grounds on which a tenant may be evicted is non-payment of rent. *N.J.S.A.* 2A:18–61.1(a). Although we need not explain in detail all of the steps involved in proving a breach of the lease and consequential right to regain possession of premises, or in securing the actual eviction through the removal of the tenant, *see N.J.S.A.* 2A:18–57; *N.J.S.A.* 2A:42–10.16, and the restoration of possession of the premises to the landlord, when the ground alleged is non-payment of rent, the process is particularly speedy and efficient.

In summary, a landlord utilizes a complaint form, usually in the pre-printed format included as an Appendix to the Rules of Court, *see* Verified Complaint—Nonpayment of Rent, Pressler & Verniero, *supra,* Appendix XI–X to *R.* 6:3–4(c), and accessible through the Judiciary's website, *available at* http://www.judiciary.state.nj.us/rules, that includes a combination of boxes to check and lines to

fill in. By using the form, the landlord is able to identify the existence and relevant terms of a lease agreement, including the monthly rental amount, the last month for which rent was paid, and the total amount of rent due.

As part of the calculation of rent due, the form permits the landlord to include late fees and attorneys' fees as rent, if they are characterized by the lease agreement as "additional rent" and if not otherwise prohibited by law. *See Hous. Auth. & Urban Redev. Agency v. Taylor,* 171 *N.J.* 580, 593, 796 *A.*2d 193 (2002) (concluding that federal law prevents inclusion of attorneys' fees and late charges as additional rent in evictions from federally funded housing projects); *Harris, supra,* 155 *N.J.* at 233–34, 714 *A.*2d 282 (observing that Section 8 precludes eviction of tenants based on failure to pay charges imposed by lease for late payment of rent).

On the return date in court on the summary dispossess proceeding, *see generally R.* 6:5–2(b) (setting forth procedures governing trials in summary dispossess actions involving landlords and tenants), unless the parties have entered into a consent agreement respecting possession, *see R.* 6:6–4, the judge hears the parties, makes findings of fact as to the allegations, and reaches a conclusion of law about which party is entitled to possess the premises.

Although the only judgment entered at the conclusion of the summary dispossess proceeding is a judgment for possession of the premises, *see Little, supra,* 135 *N.J.* at 280, 639 *A.*2d 286, part of the court's findings include the amount of rent, including additional rent, that is due and owing. That sum fixes the amount that the tenant may post into court or pay to the landlord in order to prevent the eviction from taking place. *R.* 6:3–4(c) (setting forth obligation to alert tenant in complaint about opportunity to have complaint dismissed by payment of rent due on or before 4:30 p.m. on trial date). It thus protects the tenant by identifying the sum the tenant must pay or post to prevent the eviction.

Therefore, although no money judgment can be awarded in the Landlord/Tenant Part, as a practical matter, the fixing of rent due

by the court often serves the purposes of the landlord by creating a finite sum that, if paid by the tenant, will be made available to the landlord to bring the tenant's rent current. *See Hodges v. Sasil Corp.*, 189 *N.J.* 210, 226, 915 *A.*2d 1 (2007) (observing that "in practice, the summary dispossess action is also a powerful debt collection mechanism").

Because the Anti–Eviction Act only permits eviction for the specified statutory reasons, landlords seeking to evict for nonpayment of rent, *see N.J.S.A.* 2A:18–61.1(a), technically, can only look to the amount of rent that is due and owing, and it is that calculation that is used to fix the obligations of the parties as to possession. Frequently, however, leases include other terms relating to payment of rent, including late fees and, as in this case, attorneys' fees payable in the event that the landlord is required to proceed against the tenant in court because of unpaid rent. Although the Act refers only to rent, *see ibid.*, we "have held that parties to a residential lease may treat attorneys' fees and other costs related to an eviction as 'additional rent[,]' " *Taylor, supra,* 171 *N.J.* at 586, 796 *A.*2d 193 (citing *Harris, supra,* 155 *N.J.* at 234, 714 *A.*2d 282) (additional citations omitted).

Fixing the rent, including any additional rent, that is due is a crucial step in the process of entering a judgment of possession. As we have seen, however, it does not end the eviction process for either the landlord or the tenant. If the tenant pays the amount fixed by the court in a timely fashion, the tenant is restored to possession and the landlord can gain the benefit of receiving payment of the rent that was due. If the tenant does not pay the rent that is due, there are a variety of waiting periods and additional steps that the landlord must take to secure possession of the premises and that the tenant may take in an effort to avoid eviction. *See, e.g., N.J.S.A.* 2A:18–57, –58.

## IV.

Although this dispute about the lease provision concerning attorneys' fees was not raised as a defense to an eviction com-

plaint in the Landlord/Tenant Part, but instead arose in the context of plaintiffs' challenge, on behalf of a class,[4] to the lease provisions relating to attorneys' fees generally, this background serves to guide our discussion of the issues before us in this appeal. In that context, we understand the matter before us to have two aspects.

First, we address whether plaintiffs' complaint stated a cause of action pursuant to the CFA as against either the corporate defendants or the individual defendant. Those questions can only be answered by analyzing how courts are to determine the reasonableness of a residential lease provision imposing a fixed sum for attorneys' fees that will be payable in connection with an eviction action.

Second, we consider whether plaintiffs have sufficiently stated a cause of action against the corporate defendants for negligence or negligent misrepresentation, or against the individual defendant for professional negligence. Those questions can only be answered by analyzing the relationships between plaintiffs and both the corporate and individual defendants and the bases on which plaintiffs have asserted that they are entitled to relief.

A.

The standard traditionally utilized by courts to determine whether to dismiss a pleading for failure to state a claim on which relief may be granted is a generous one. As we have explained, "[i]n reviewing a complaint dismissed under *Rule* 4:6–2(e) our inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." *Printing Mart–Morristown, supra,* 116 *N.J.* at 746, 563 *A.*2d 31. The essential test is simply "whether a cause of action is 'suggested' by the facts."

---

[4] Because the trial court dismissed the complaint prior to the filing of an answer, there has not yet been any determination as to whether plaintiffs will be permitted to proceed on behalf of a class. *See R.* 4:32–1; *R.* 4:32–2.

*Ibid.* (quoting *Velantzas v. Colgate–Palmolive Co.*, 109 *N.J.* 189, 192, 536 *A.*2d 237 (1988)).

■ In exercising this important function, "a reviewing court searches the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." *Ibid.* (internal quotation marks and citation omitted).

■ Moreover, "the [c]ourt is not concerned with the ability of plaintiffs to prove the allegation contained in the complaint[,]" rather, "plaintiffs are entitled to every reasonable inference of fact." *Ibid.* As we have stressed, "[t]he examination of a complaint's allegations of fact required by the aforestated principles should be one that is at once painstaking and undertaken with a generous and hospitable approach." *Ibid.*

### B.

■ The debate between the parties concerning the sufficiency of the claims for CFA relief can be narrowly addressed. In the context of this statutory cause of action, "we have found that there are only three elements required for the prima facie proofs: 1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 197 *N.J.* 543, 557, 964 *A.*2d 741 (2009); *see Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 *N.J.* 372, 389, 929 *A.*2d 1076 (2007) (explaining three prima facie elements).

■ We begin with the CFA claim to the extent that it is directed to the corporate defendants. Their challenge to the sufficiency of the complaint was based on the assertion that plaintiffs had not alleged, and could not demonstrate, that they had engaged in any unlawful or unconscionable act. That is, the corporate defendants argued that because the provision fixing attorneys' fees was reasonable, there could be no CFA violation.

That argument, in turn, was based on their characterization of the attorneys' fees as being in the nature of liquidated damages. To the extent that the fees could be so characterized, they would be presumptively reasonable, with the plaintiffs bearing the burden of demonstrating that they were not.

We are not persuaded by these arguments. We do not doubt that parties of relatively equal bargaining power could agree to include in a contract a provision providing for payment of attorneys' fees in a fixed sum. We have long recognized that parties have the power to agree to sums in the nature of liquidated damages, *see Wasserman's Inc. v. Twp. of Middletown*, 137 *N.J.* 238, 250, 645 *A.*2d 100 (1994); *accord Westmount Country Club v. Kameny*, 82 *N.J.Super.* 200, 205, 197 *A.*2d 379 (App.Div.1964) (defining liquidated damages), and we have found such clauses to be enforceable. That, however, does not resolve the corporate defendants' challenge to the claim raised by plaintiffs in their complaint.

■ Referring to the clause as being one for liquidated damages misses the mark in several respects. First, in the context of a summary dispossess action based on a residential lease, an attorneys' fee clause is not a form of damages, but an additional rent term.

Even were that not so, the lease provision itself does not fix a liquidated sum. Instead, it first sets two possible levels [5] of fees, but then cautions that, if the actual attorney's fee exceeds $400, the tenant will be obligated to pay that higher amount. This arrangement simply does not fit the traditional definition of liquidated damages. *See MetLife Capital Fin. Corp. v. Washington Ave. Assocs.*, 159 *N.J.* 484, 495, 732 *A.*2d 493 (1999) (including in explanation of liquidated damages elements of "difficulty in assessing damages, intention of the parties, the actual damages sus-

---

[5] The amended provision utilized in the 2010 leases does not have this shortcoming, fixing only the $400 fee, but that provision makes the fee due and owing regardless of the actual effort expended on the part of an attorney.

tained, and the bargaining power of the parties"); *Westmount, supra,* 82 *N.J.Super.* at 205, 197 *A.*2d 379 (defining liquidated damages as "the sum a party to a contract agrees to pay if he breaks some promise, and which, having been arrived at by a good faith effort to estimate in advance the actual damage that will probably ensue from the breach, is legally recoverable as agreed damages if the breach occurs").

Second, the leases signed by plaintiffs are lengthy, pre-printed forms that, like most residential leases, are contracts of adhesion. *See Harris, supra,* 155 *N.J.* at 235, 714 *A.*2d 282 (observing in context of residential tenancy that "leases such as the one involved here are essentially contracts of adhesion"). Notwithstanding the corporate defendants' assertion in their brief that the attorneys' fees were "pre-negotiated" provisions in the leases, there is no basis in the record to conclude, at this preliminary juncture, that plaintiffs negotiated, or had the opportunity to negotiate, about the amounts included as attorneys' fees.

■ Third, as we have held in an analogous context, tenants must be afforded a forum to challenge the reasonableness of lease clauses on which landlords rely for purposes of summary dispossess proceedings. *See 447 Assocs., supra,* 115 *N.J.* at 532, 559 *A.*2d 1362 (holding that tenant's acceptance of renewal lease did not foreclose subsequent challenge to reasonableness of new lease term). That these plaintiffs may have paid the attorneys' fees set forth in the leases in order to avoid eviction does not preclude them from attempting to challenge the fees as being so unreasonable as to violate the CFA in a corollary proceeding.

Finally, as the Appellate Division recognized, the landlord in a summary dispossess action bears the burden of proving the reasonableness of the lease terms; permitting the landlord to characterize the attorneys' fee provision as a liquidated sum would impermissibly shift that burden to plaintiffs. *See Wasserman's, supra,* 137 *N.J.* at 258, 645 *A.*2d 100 (recognizing that because liquidated damages are presumptively reasonable, burden is on challenger to demonstrate unreasonableness).

Similarly, we have held that "attorney[s'] ... fees awarded by courts, regardless of their basis, are governed by principles of reasonableness[.]" *Walker v. Giuffre*, 209 *N.J.* 124, 127–28, 35 *A.*3d 1177 (2012); *see Litton Indus., Inc. v. IMO Indus., Inc.*, 200 *N.J.* 372, 386, 982 *A.*2d 420 (2009) (commenting that "[w]e have applied the same test for reasonable attorneys' fees in contract cases that we use in other attorneys' fee award cases in New Jersey"). Moreover, we have made plain that the party seeking to be awarded attorneys' fees ordinarily bears the burden of proving that they are reasonable, and that contractual fee-shifting provisions are strictly construed, *see N. Bergen Rex Transp. v. Trailer Leasing Co.*, 158 *N.J.* 561, 570, 730 *A.*2d 843 (1999) (observing that "even where attorney-fee shifting is controlled by contractual provisions, courts will strictly construe that provision in light of the general policy disfavoring the award of attorneys' fees"); *McGuire v. City of Jersey City*, 125 *N.J.* 310, 326–27, 593 *A.*2d 309 (1991) (commenting that "because such contractual provisions conflict with the common-law preference for avoiding award of fees, they are strictly construed by our courts"). In light of these precedents, were we to accept the logic of the corporate defendants' argument, we would be shifting their burden of proving reasonableness to plaintiffs, thereby adopting an approach we deem to be both inappropriate and impermissible.

Applying those principles to the corporate defendants' motion to dismiss the complaint for failure to state a claim leads us to conclude that the count in the complaint for relief pursuant to the CFA survives. Indulgently interpreted, plaintiffs claimed that the amounts of the attorneys' fees fixed in the leases were unreasonable because they bore no relationship to the work involved in a summary dispossess action or the actual fees that were or could have been incurred in those proceedings. In part, plaintiffs asserted that the corporate defendants routinely file hundreds of such complaints, averaging 200 each month in Camden County alone, that the work devoted to any particular complaint is modest both in terms of the preparation of the pleading

and the time expended in a court appearance, that simply by multiplying the fixed fee by the average number of complaints would suggest that the fees are unreasonable, and that, because the corporate defendants appear through a salaried attorney-employee, a reasonable fee would be one that reflected her salary.

We do not opine on whether any of those arguments will eventually be sufficient to prove the corporate defendants' liability to plaintiffs pursuant to the CFA.[6] Rather, we conclude only that plaintiffs have articulated facts that are sufficient, when tested in accordance with the indulgent standard that applies to motions for dismissal pursuant to *Rule* 4:6–2(e), to be permitted to proceed. It may well be that the corporate defendants can demonstrate that the basis on which the fees were calculated and included in the leases is reasonable, but it will be their burden to do so.

We reach a different conclusion with respect to the sufficiency of plaintiffs' claim against the individual defendant for CFA relief. The complaint, indulgently interpreted, contends that it was an unconscionable business practice to include the attorneys' fee provisions in the leases when they did not accurately represent the fees. It does not, however, suggest that the individual defendant had any role in the drafting of the leases, or the calculation of the fees that were included, or that she performed any other act that arguably falls within the scope of the CFA.

Although we have recognized that an individual may be found liable for a CFA violation in cases involving employees in a corporate setting, *see Allen v. V. & A Bros., Inc.*, 208 *N.J.* 114,

---

[6] We do not suggest that in every summary dispossess action, the landlord's attorney should be required to prove with precision that the basis for an attorney's fee, included in a lease as additional rent, was calculated as would be the case in an ordinary application for a fee award, *see RPC* 1.5, because requiring such proofs would threaten to undermine the efficiency of summary dispossess proceedings. Nonetheless, courts considering such provisions are empowered to decline to include an attorney's fee as part of the rent due and owing, even when included in a lease, if the sum is not reasonable on its face or if the attorney is unprepared to demonstrate that it is reasonable under the circumstances.

131–32, 26 *A.*3d 430 (2011); *Gennari v. Weichert Co. Realtors*, 148 *N.J.* 582, 608–10, 691 *A.*2d 350 (1997), the factual circumstances that would support such relief have been limited. For example, as we have held, an employee who merely uses a corporate form in a transaction with a plaintiff who claims that the form violates the CFA does not thereby become individually liable for that violation. *See Kent Motor Cars, Inc. v. Reynolds and Reynolds Co.*, 207 *N.J.* 428, 450–51, 25 *A.*3d 1027 (2011).

There being no suggestion in the complaint that there is any basis that would support liability of the individual defendant pursuant to the CFA in accordance with these principles, we conclude that the Appellate Division erred in reinstating the complaint against her.

### C.

Count Three of the complaint presents us with more of a challenge, because it has been characterized as a claim for negligence, for misrepresentation, and for malpractice. That is, it is captioned as a claim for negligence, it asserts that defendants made misrepresentations to plaintiffs, and the filing of an Affidavit of Merit implies that it is meant to be a claim for malpractice.

In considering the sufficiency of the pleading in the context of the *Rule* 4:6–2(e) motion, the Appellate Division reasoned that the complaint could be read to allege that the corporate defendants misrepresented their actual costs of legal representation. As the panel explained, that allegation could meet the definition of negligent misrepresentation, which we have defined to include "[a]n incorrect statement, negligently made and justifiably relied upon, [and] ... economic loss or injury sustained as a consequence of that reliance." *H. Rosenblum, Inc. v. Adler*, 93 *N.J.* 324, 334, 461 *A.*2d 138 (1983) (citation omitted); *see Kaufman v. i–Stat Corp.*, 165 *N.J.* 94, 109, 754 *A.*2d 1188 (2000) (explaining requirement that injured party demonstrate reliance on misrepresentation). Alternatively, the appellate court found that plaintiffs may have alleged that the corporate defendants falsely represented that the

$400 and $200 sums set forth in the leases constituted their legal costs, when their actual legal costs were significantly less than that. Although those assertions do not sound in negligence, the pleading refers to misrepresentations and to that extent, we concur with the appellate court's analysis as to the corporate defendants.

Count Three, however, also formed the basis for plaintiffs' assertion that the individual defendant is liable to them for professional negligence. As we have held, the grounds on which any plaintiff may pursue a malpractice claim against an attorney with whom there was no attorney-client relationship are exceedingly narrow.

First, we reject entirely plaintiffs' suggestion that they can maintain a cause of action based on an assertion that the attorney engaged in fee-sharing. As we have long held, the assertion that an attorney has violated one of our ethical rules does not give rise to a cause of action, although the evidence may be relevant for another purpose. *Baxt v. Liloia*, 155 *N.J.* 190, 197–203, 714 *A.2d* 271 (1998); *see Brundage v. Estate of Carambio*, 195 *N.J.* 575, 602–03, 951 *A.2d* 947 (2008) (reiterating that "[w]e have declined to create a new tort-based cause of action against an attorney based on a claim by an adversary of an asserted violation of our *RPC* s"). We find no reason to alter that clear holding today.

Second, although we have previously concluded that there are circumstances in which an attorney may be liable to third parties, each instance in which we have so held has been carefully circumscribed. For example, we have affirmed the Appellate Division's conclusion that "an attorney for a seller [of real estate] has a duty not to provide misleading information to potential buyers who the attorney knows, or should know, will rely on the information." *Petrillo v. Bachenberg*, 139 *N.J.* 472, 474, 655 *A.2d* 1354 (1995). There, we observed that the scope of the duty was limited, commenting that "attorneys may owe a duty of care to non-clients when the attorneys know, or should know, that non-clients will

rely on the attorneys' representations and the non-clients are not too remote from the attorneys to be entitled to protection." *Id.* at 483–84, 486, 655 *A.*2d 1354 (noting that although attorney did not prepare opinion letter, he "extracted information from existing percolation-test reports, created the composite report, and delivered the report to a real estate broker" knowing that it might be given to prospective purchaser).

Similarly, we have permitted a bank to proceed on a claim of negligent misrepresentation against an attorney for one of its creditors, albeit on only one of its two asserted bases. *Banco Popular N. Am. v. Gandi,* 184 *N.J.* 161, 182–83, 876 *A.*2d 253 (2005). That is, we first rejected the bank's claim that the attorney could be liable to it for assisting his client in transferring assets to defraud the bank, reasoning that because the transfer was designed to be secret, the attorney made no representation to the bank. *Id.* at 182, 876 *A.*2d 253. Moreover, we recognized that there is no substitute for the privity requirement where the attorney "does absolutely nothing to induce reasonable reliance by a third party[.]" *Id.* at 180, 876 *A.*2d 253. Nevertheless, we found a sufficient factual basis to permit the bank's claim to proceed based on the attorney's negotiations with the bank and the opinion letter he provided to the bank. *Id.* at 183, 876 *A.*2d 253. We reasoned, consistent with our analysis in *Petrillo,* that the bank could pursue the attorney because the attorney knew or should have known that the bank would rely on his misrepresentations. *Ibid.*

In the context of summary dispossess proceedings, we have cautioned attorneys about the inherent dangers of offering advice to unrepresented tenants, *see Harris, supra,* 155 *N.J.* at 241, 714 *A.*2d 282, and we have fixed standard procedures designed to avoid the circumstances in which a tenant might infer that a landlord's attorney has offered advice on which the tenant should rely, *see id.* at 242–43, 714 *A.*2d 282. We have not considered, in that context, whether the attorney owes a duty of care to the unrepresented tenants to whom the attorney speaks, and we need

not do so in this appeal. Indeed, as the individual defendant points out, we have recently reiterated that "[w]e have traditionally been reluctant to permit a nonclient to sue an adversary's attorney, and with good reason." *LoBiondo v. Schwartz*, 199 *N.J.* 62, 100, 970 *A.*2d 1007 (2009). As we explained,

> [o]ur reluctance to permit nonclients to institute litigation against attorneys who are performing their duties is grounded on our concern that such a cause of action will not serve its legitimate purpose of creating a remedy for a nonclient who has been wrongfully pursued, but instead will become a weapon used to chill the entirely appropriate zealous advocacy on which our system of justice depends. [*Id.* at 100–01, 970 *A.*2d 1007.]

Our ordinary reluctance to permit non-clients to sue attorneys remains unchanged. Even in the context of a motion filed pursuant to *Rule* 4:6–2(e),[7] we glean from our review of the record no fundament of a claim that would support liability of the individual defendant to plaintiffs. Even indulgently read, plaintiffs' pleading does not suggest any of the narrow grounds that would give rise to a cause of action against an attorney with whom one has no attorney-client relationship. *See Banco Popular, supra,* 184 *N.J.* at 182–83, 876 *A.*2d 253; *Petrillo, supra,* 139 *N.J.* at 479–84, 655 *A.*2d 1354 (giving contexts in which attorney may owe duty to non-client).

## V.

The judgment of the Appellate Division is affirmed to the extent that it converted the dismissal of Count One into a dismissal without prejudice; the judgment is affirmed to the extent that it reinstated the claims raised in Count Two and Count Three as against the corporate defendants; the judgment is reversed to the extent that it reinstated the claims raised in Count Two and Count Three as against the individual defendant.

---

7 Although not raised by any of the parties to this appeal, the indulgent standard embodied in *Rule* 4:6–2(e) cannot substitute for compliance with our ordinary pleading rules as they relate to claims of fraud and misrepresentation, *see R.* 4:5–8.

*For affirmance in part; reversal in part*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, HOENS and PATTERSON, and Judges RODRÍGUEZ (temporarily assigned) and CUFF (temporarily assigned)—7.

*Opposed*—None.