**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1733-23

JCL REALTY HOLDINGS
9, LLC,

     Plaintiff-Respondent,

v.

FRANKLIN BURGOS and
JANET SANTAMARIA,

     Defendants-Appellants.

_____

Submitted May 15, 2025 — Decided May 30, 2025

Before Judges Natali and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-7313-23.

Franklin Burgos, appellant pro se.

Respondent has not filed a brief.

PER CURIAM

In this residential landlord-tenant case, defendant Franklin Burgos[1] (tenant) appeals from a January 9, 2024 judgment of possession entered in favor of plaintiff JCL Realty Holdings 9, LLC (landlord) following a bench trial. Defendant argues the court failed to consider his evidence and erred in finding he owed outstanding rent and costs. We affirm.

I.

On December 14, 2020, plaintiff and defendant executed a lease agreement for an apartment in Union City with an effective date of January 2021. The lease provided for monthly rent of $2,172 until October 2023, when the amount increased to $2,237.16.

For the duration of the lease, defendant's rent was paid by third-party organizations: the New York Special One-Time Assistance (SOTA) program and the New Jersey Department of Community Affair's (DCA) rental assistance program, a COVID-19 emergency relief rental assistance program. The rental assistance provided were paid in periodic lumpsum payments and not monthly.

---

[1] Although Janet Santamaria is a named defendant on the caption, only Burgos participated in the Special Civil Part trial and this appeal.

A-1733-23

On October 12, 2023, plaintiff filed a complaint against the defendants seeking unpaid rent and costs.[2] Trial commenced on January 9, 2024, in the Special Civil Part. Plaintiff has one member who happens to be an attorney, and defendant dismissed his legal services attorney and chose to represent himself. From the beginning, the trial was marked by near constant interruptions, mostly by defendant.

Plaintiff's representative testified that according to his records, defendant owed rent for part of October 2023—representing the increase in rent effective as of October 2023—as well as for November 2023, December 2023, and January 2024, totaling $6,711. More particularly, he testified "[t]here[ is] also $130 owed . . . from the October, 2023 rent[,] . . . $220 in late charges[,] . . . and the filing fees of $62." The full amount due and owing was $7,123.

Plaintiff acknowledged receipt of rental payments made on defendants' behalf from SOTA and confirmed DCA had also paid defendant's rent with a final payment on September 5, 2023 of $4,344 for September and October 2023. It adduced testimony that in November and December 2021, SOTA and DCA

---

[2] The complaint is not included in the record on appeal.

payments overlapped and, thus, defendant was entitled to a credit of two months. Plaintiff also acknowledged defendant had two free months under his lease.[3]

Plaintiff's representative testified that he notified DCA of the overlapping payment, in a June 2022 correspondence, and reimbursed the rental assistance program via two checks. It next addressed defendant's argument he was entitled to two months of free rent under the lease, stating that both credits had been applied because it did not receive rent from DCA for July, August, or September 2023, and applied the credit to defendant's account for those months.

Defendant repeatedly called plaintiff's representative "a liar" and accused him of making "false accusations." He also testified that despite the lease date of January 1, 2021, he received the keys to the apartment on January 10, yet plaintiff did not pro-rate the rent for that month. Defendant believed "[t]he only reason [plaintiff] brought [him] to court [was] to just to get [him] out of the apartment." The judge found defendant's testimony that plaintiff did not turnover the keys until January 10 irrelevant. He then asked defendant, at least five times, when he last paid rent. Defendant did not answer the question directly, but continued to insist his rent was paid.

---

[3] The residential lease is not included in the record on appeal.

A-1733-23

The judge also asked defendant whether he had ever paid rent himself. Defendant replied "[n]o." Defendant then introduced a letter from DCA, which he claimed showed his rent had been fully paid for the duration of the lease.

The record includes a December 8, 2021 correspondence from DCA referencing the "total amount approved" for emergency rental assistance. It does not, however, confirm the actual rental assistance payments issued for the months of November 2021 through October 2023.[4] At the conclusion of the trial, the judge issued an oral decision finding "[t]here[ was] not much disagreement factually between the two parties if they stopped and listened to each other." He next summarized the undisputed facts and the parties' arguments and concluded they both agreed DCA had overpaid plaintiff and "plaintiff under oath g[ave] him the credit for that." The judge found the testimony of plaintiff's representative believable and credible, and noted he kept accurate records and operated like an accountant. He concluded defendant owed $6,711, plus $130 outstanding from October 2023's rent, $220 in late charges, and $62 in court filing fees totaling $7,123. The judge granted plaintiff a judgment of possession.

---

[4] To the extent that defendant had a separate document confirming DCA's actual payments, it is not included in the record.

Following the decision, defendant filed a number of post-judgment motions seeking to undo the judgment of possession, some of which were heard by different judges.[5]  Defendant attempted to introduce evidence disputing the amount owed by introducing documents purporting to show proof of thirty-eight months of rental payments and applicable credits.  Each motion resulted in a denial as each judge reminded defendant of his right to appeal from the judgment of possession.

In yet another hearing on a motion to dismiss, the judge explained[6]

> when there[ is] a judgment after trial[,] a party can file a motion for a new trial.  . . .
>      You have[ no]t satisfied any of those standards. When there is a trial, that's the end game.  . . . [The parties] get their fair fight in court, they win, they lose. If they[ a]re unhappy they take an appeal.

The judge denied the order to show cause and explained, "[i]f you are dissatisfied with my decision, you have [forty-five] days to file an appeal with the New Jersey Appellate Court," and informed him that he may contact the Hudson County Bar Association for a lawyer.

---

[5]  We glean this information from the transcripts of these proceedings.

[6]  The judge considered the March 7, 2024 motion to dismiss as an order to show cause because defendant's arguments mirrored those he had previously made in a prior order to show cause.

6

On March 28, 2024, defendant filed another motion to dismiss, disputing the January 9 and March 7 decisions. The judge noted that he had treated the prior motion as an order to show cause and he would treat the current motion as a motion for reconsideration "so that [defendant] can at least make the argument." He denied the motion after oral argument.

## II.

Our review of a judgment entered following a bench trial is very limited. We apply a deferential standard of review. D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013). When the trial judge acts as the fact finder in a bench trial, we "must accept the factual findings of" that trial judge, when such findings "are 'supported by sufficient[,] credible evidence in the record.'" State v. Mohammed, 226 N.J. 71, 88 (2016) (quoting State v. Gamble, 218 N.J. 412, 424 (2014)). We will "'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice.'" Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

"[A] summary dispossess action does not permit either a landlord or tenant to plead a claim for damages." Raji v. Saucedo, 461 N.J. Super. 166, 170 (App. Div. 2019) (citing Hodges v. Sasil Corp., 189 N.J. 210, 221 (2007)); see also Green v. Morgan Props., 215 N.J. 431, 449 (2013) (recognizing "no money judgment can be awarded in the Landlord/Tenant Part"). The "only judgment" entered in a "summary dispossess proceeding is a judgment for possession of the premises," though "part of the court's findings [may] include the amount of rent . . . that is due and owing," thereby "fix[ing] the amount that the tenant may . . . pay . . . in order to prevent the eviction from taking place." Id., at 449 (first citing Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994), then R. 6:3-4(c)).

"By confining itself to the landlord's right to possession, and fixing of the amount of rent due to afford the tenant the opportunity to avoid eviction by its payment, the statutory summary dispossess device provides a quick disposition of the landlord's claim for possession." Raji, 461 N.J. Super. at 170 (citations omitted); see also Green, 215 N.J. at 447 (finding a purpose of the Anti-Eviction Act, N.J.S.A. 2A:18-61.1, was to "protect[] landlords by providing an efficient and inexpensive way to evict a tenant and regain possession of the leased premises when appropriate").

A-1733-23

Defendant argues the judge disregarded evidence showing payments had been made to cover the entire period he had resided in plaintiff's apartment. More particularly, he asserts there was evidence of a credit for two months of rent "that should have rolled over for the months of January 2024 and February 2024"; SOTA program payments from January 2021 through December 2021; DCA payments from November 2021 through October 2023, two of which overlapped with the previous SOTA payments, resulting in overpayment by two months; plaintiff had "falsely returned" checks to DCA for the months of November 2021 and December 2021; DCA rules and regulations stating plaintiff could not file for evictions while awaiting payment; and an audio recording with video of plaintiff stating that rent was paid through March 2024.

Applying the requisite deferential standard, we remain unpersuaded the judge erred in his review of the evidence, factual determination, and legal conclusion. Griepenburg, 220 N.J. at 254 (quoting Rova Farms, 65 N.J. at 484). At trial, defendant testified third-party rental assistance programs paid his rent for the entire lease period, but the evidence relied upon by defendant was lacking. The judge reviewed the evidence, including DCA's correspondence, and concluded each of the amounts listed had already been included in plaintiff's calculation and the correspondence from DCA did not show payments for the

period of time in dispute: payment of the increase in rent effective October 2023, or payments from November 2023 through January 2024.

As to defendant's claims he was entitled to two separate credits that could have been applied to cover the months he owed, including credits provided for in the lease and based on DCA's overpayment covering November and December 2021, we discern no basis to support these contentions. Although plaintiff acknowledged DCA included payments for November and December of 2021 that had previously been paid by SOTA, plaintiff subsequently reimbursed DCA for those two months. This therefore ends the inquiry into whether defendant was entitled to any further credit from plaintiff based on DCA's overlapping payment.

Further, the judge found plaintiff's testimony credible that DCA had not paid him for July, August, or September 2023, and that he applied the two free months as a credit towards those months. Moreover, DCA's correspondence included in the record confirms plaintiff's contention that DCA's rental assistance payments did not include the increase in the rental amount for October 2023, and no payments were made for the ensuing months of November and December 2022, and January 2023.

A-1733-23

Because defendant cannot show the judge's decision was manifestly unsupported by the competent, relevant evidence such that affirmance would constitute an injustice, the judgment must be affirmed. Griepenburg, 220 N.J. at 254 (quoting Rova Farms, 65 N.J. at 484). To the extent we have not addressed any of plaintiff's remaining arguments, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division