NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1247-16T3

DARNICE GREEN, MATHEW BLUMBERG,
MICHAEL PERMENTER and BETH
PERMENTER, individually and as
class representatives on behalf
of others similarly situated,

 Plaintiffs-Appellants,

v.

MORGAN PROPERTIES, MORGAN
MANAGEMENT, MITCHELL L. MORGAN,
INC., EAST COAST THE WILLOWS,
LLC and EAST COAST COLONIAL
APARTMENTS, LLC,

 Defendants-Respondents,

and

ROSEMARY SPOHN, ESQ.,

 Defendant.
______________________________________

 Argued March 16, 2017 – Decided September 21, 2017

 Before Judges Alvarez, Accurso and Manahan.

 On appeal from Superior Court of New Jersey,
 Law Division, Camden County, Docket No. L-
 4158-10.
 Lewis G. Adler argued the cause for
 appellants (Law Office of Lewis G. Adler and
 Law Office of Paul DePetris, attorneys; Mr.
 Adler and Mr. DePetris, on the brief).

 Daniel S. Bernheim, of the Pennsylvania bar,
 admitted pro hac vice, argued the cause for
 respondents Morgan Properties, Morgan
 Management, Mitchell L. Morgan, Inc. and
 East Coast Colonial Apartments (Wilentz,
 Goldman & Spitzer, and Mr. Bernheim,
 attorneys; Rachel C. Heinrich and Mr.
 Bernheim, on the brief).

 Jonathan I. Epstein argued the cause for
 respondent East Coast The Willows (Drinker,
 Biddle & Reath, attorneys; Mr. Epstein and
 John P. Mitchell, on the brief).

PER CURIAM

 Plaintiffs Darnice Green, Michael and Beth Permenter and

their son Mathew Blumberg appeal, on leave granted,1 from an

August 2, 2016 order denying class certification in their long-

running suit against the owners and property managers of their

apartment complexes, defendants East Coast The Willows, LLC,

East Coast Colonial Apartments, LLC, Morgan Properties, Morgan

Management, and Mitchell L. Morgan, Inc., over an attorney's fee

provision in their leases. Although we agree with the trial

court that the class plaintiffs proposed was too broadly

1
 See Daniels v. Hollister Co., 440 N.J. Super. 359, 361 n.1
(App. Div. 2015) (explaining our general policy of liberally
granting leave to appeal from orders granting or denying class
certification).

 2 A-1247-16T3
construed to meet the requirements of Rule 4:32-1(a) and (b), we

think the smaller, more narrowly defined class plaintiffs

offered in the alternative can be certified. We accordingly

vacate the order denying class certification and remand for

certification of a class in conformity with this opinion.

 The essential facts were set forth in the Supreme Court's

prior opinion in this matter, Green v. Morgan Props., 215 N.J.

431, 438-39 (2013).2 We summarize them here, augmented by the

undisputed facts from the record on the class certification

motion. Plaintiffs are current or former tenants of The

Willows, a 347-unit apartment complex in Barrington, or

Colonial, a 188-unit apartment complex in Cherry Hill. Since

2007, both complexes have been operated by one of the Morgan

defendants,3 Delaware corporations that manage 131 apartment

2
 The Court affirmed in part and reversed in part our decision
reversing the trial court order dismissing plaintiffs' complaint
pursuant to Rule 4:6-2(e). See Green, supra, 215 N.J. at 460.
Specifically, the Court affirmed the reinstatement of
plaintiffs' claims under the Consumer Fraud Act (CFA), N.J.S.A.
56:8-1 to -206, and for negligent misrepresentation, and agreed
that plaintiffs' claims under the Anti-Eviction Act, N.J.S.A.
2A:18-61.1 to -61.12 should have only been dismissed without
prejudice. Id. at 437, 439, 460. The Court reversed our
decision reinstating the claims against the individual
defendant, Morgan's in-house counsel Rosemary Spohn, finding no
basis for liability against her. Id. at 456-57.
3
 The Morgan defendants claim the two apartment complexes in
which plaintiffs resided were managed by Mitchell L. Morgan
 (continued)

 3 A-1247-16T3
complexes in ten different states, sixty-nine in New Jersey. In

September 2007, Morgan created an in-house legal department to

handle lease enforcement and tenant evictions at the sixty-nine

New Jersey properties it manages. Morgan maintains its New

Jersey legal department handles only such matters and no other

legal work.

 From 2007 until 2010, each named plaintiff was a party to a

lease requiring payment of an attorney's fee of $400 as

additional rent in the event the landlord had to employ a lawyer

to recover rent due and owing.4 The lease provided the tenant

(continued)
Management, Inc., that Morgan Properties is a trade name and
there is no Morgan Management. As the issue is not critical to
the questions presented on appeal, we note the dispute but do
not resolve it.
4
 The pertinent paragraph provided:

 (a) Landlord is entitled to remove the
 Tenant from the apartment for good cause
 under New Jersey Law. If Landlord
 institutes legal proceedings to remove
 Tenant from the apartment with good cause,
 including the collecting of rent, additional
 rent or any other charges due and owing
 under the lease, Tenant shall pay to
 Landlord court costs and costs for the
 preparation and filing of legal documents,
 reasonable attorney's fees and any
 additional costs of legal proceedings.
 Landlord is entitled to begin a legal action
 for non-payment of rent at any time after
 rent is due and owing and not paid. Rent is
 (continued)

 4 A-1247-16T3
(continued)
 due and owing on the first day of the month.
 Landlord is further entitled to late charges
 as set forth in Paragraph 3 of this lease
 and costs, when rent remains due and owing
 after the fifth (5) day of the month. In
 addition, if rent is not received by
 Landlord within fifteen (15) days after the
 due date, then, in addition to all other
 rights and remedies which Landlord may have,
 Landlord or its agents may report such
 delinquency or non-payment to national
 credit reporting agencies. (b) If Tenant
 fails to pay the entire amount of rent due
 and owing, and the services of an attorney
 are thereby required to resolve the matter,
 either by court appearance, preparation of a
 consent to be filed with the court or for
 any other purpose, then a reasonable
 attorney's fee of four hundred dollars
 ($400.00) is due and payable as additional
 rent by the Tenant. If the attorney's fee
 exceeds four hundred dollars ($400.00) then
 the Tenant will be required to pay the
 entire amount of reasonable attorney's fees
 [due] and owing to the attorney. In the
 event Tenant receives a Summons and
 Complaint and pays all rent due, including
 late charges and a legal fee of two hundred
 dollars ($200.00), by certified check or
 money order prior to the court date so that
 Landlord's attorney is not required to make
 an appearance on behalf of the Landlord,
 Tenant shall not be liable for the remaining
 two hundred dollar ($200.00) legal fee.
 However, the four hundred dollars ($400.00)
 attorney's fee is due and owing even if
 Tenant makes full payment on the day of the
 court appearance, because the attorney will
 be required to make an appearance on behalf
 of Landlord. All payments are to be by
 certified check, cashier's check or money
 order only. (c) If the Landlord is required
 (continued)

 5 A-1247-16T3
was responsible for all fees exceeding $400, and could receive a

$200 credit if all rent, including a $200 attorney's fee, was

paid before a lawyer was required to appear in court. The lease

further provided for imposition of the $400 fee for "matters

that do not require the filing of an action with a court

including the service of valid notices to cease, notices to

vacate, and demands for possession." The leases were amended in

(continued)
 to institute or become involved in legal
 proceedings requiring the services of an
 attorney for any good cause, including but
 not limited to, an action for possession,
 collection of money, rent or other damages,
 or any other valid reason, including
 petitioning the court for injunctive relief,
 making an appearance at a hearing requested
 by Tenant for a stay of any portion of
 eviction proceedings, including the issuance
 and execution of the warrant of removal
 and/or writ of possession, or other pre-
 and/or post-eviction relief, or any other
 action whether it be of a civil or criminal
 nature, then this entitles the Landlord to
 collect a reasonable attorney's fee of four
 hundred dollars ($400.00), plus costs and
 interest due and owing. If the actual
 amount of the attorney's fee exceeds four
 hundred dollars ($400.00), then Tenant will
 be responsible for the entire reasonable
 attorney's fee. Tenant is also responsible
 for attorney's fees incurred for matters
 that do not require the filing of an action
 with a court including the service of valid
 notices to cease, notices to vacate, and
 demands for possession, in the amount of
 four hundred dollars ($400.00).

 6 A-1247-16T3
2010 to eliminate the automatic $200 reduction if no court

appearance was required.5

 Each of the named plaintiffs was subjected to eviction

proceedings for non-payment of rent on multiple occasions and

was charged $400 in attorneys' fees each time. They did not,

however, pay that sum each time. Sometimes Morgan reduced the

fee charged. Plaintiffs Green and Blumberg vacated their

apartments still owing rent, including attorneys' fees, although

Blumberg's co-signer eventually paid all Blumberg owed on his

lease. Their individual circumstances are summarized below.

The Named Plaintiffs

 Plaintiff Green was a tenant at The Willows from May 2002

until September 2010. The parties agree she was late paying her

rent on twenty-six occasions, resulting in the filing of five

summary dispossess actions. Each eviction action included a

5
 The 2010 lease provision provides as follows:

 (f) If the Landlord uses the services of an
 attorney (including in-house counsel) for
 any good cause in relation to the
 enforcement or defense of any terms of this
 Lease, or in any relation to this tenancy,
 whether or not litigation is commenced,
 Resident must pay Landlord's attorney fees
 in the amount of four hundred dollars ($400)
 plus costs as Additional Rent for each cause
 in which the attorney's services are
 engaged.

 7 A-1247-16T3
demand of $400 for legal fees and court costs of $31. Green

paid the full $400 on two occasions. She was granted a $200

credit on one occasion and a $300 credit on another. She did

not pay any amount toward the $400 legal fee charged in the

fifth and final proceeding.6 Green was thus charged total legal

fees of $2000, of which she paid $1100. Green quit her

apartment owing The Willows $2960.11, after application of her

security deposit and interest.

 The Permenters have resided at Colonial since January 2005.

The parties agree the couple was late paying their rent on over

thirty occasions, resulting in the filing of five summary

dispossess actions. Each eviction action included a demand of

$400 for legal fees and court costs of $37. The Permenters paid

the full $400 on one occasion. They were granted a credit of

$400 on one occasion and a credit of $200 on three others. The

6
 We have extrapolated the fees and credits for each named
plaintiff for each summary dispossess action from the dates of
the charges, the credits and the summary dispossess actions
included in the record. The parties have calculated the total
legal fees charged to the named plaintiffs, as well as the total
fees they paid for all evictions, and we have included those
figures here as well. Defendants have also calculated the
average fee each named plaintiff paid per eviction. We have not
included those averages because the actual fees charged and paid
for each eviction, not the averages, would appear to be the
correct way of measuring ascertainable loss and damages in this
case. See D'Agostino v. Maldonado, 216 N.J. 168, 192-93 (2013).

 8 A-1247-16T3
Permenters were thus charged total legal fees of $2000, of which

they paid $1000.

 Plaintiff Blumberg was a tenant at Colonial from March 2006

through September 2009. He was late paying rent every month but

one and was subject to five summary dispossess actions. Each

eviction action included a demand of $400 for legal fees and $37

in court costs. Blumberg paid the full $400 on two occasions.

He was granted a $400 credit on one occasion and a $200 credit

on another. Although he was evicted from his apartment in

September 2009 owing $1252.81, including the $400 legal fee

charged on his last eviction, that amount was paid in full in

August 2010 by his aunt, who co-signed his lease. Blumberg was

thus charged total legal fees of $2000, of which "he" paid

$1400.

The Supreme Court's Opinion

 In its opinion reinstating the CFA claim against

defendants, the Court expressed several reasons for rejecting

defendants' argument that the $400 lease term represented a

reasonable liquidated damages provision. Green, supra, 215 N.J.

at 452-55. Chief among them was that it would impermissibly

shift to plaintiffs the burden of establishing the

reasonableness of defendants' attorneys' fees. Id. at 454-55.

The Court held plaintiffs must be permitted the opportunity to

 9 A-1247-16T3
challenge the reasonableness of the lease clause on which the

landlords relied in the summary dispossess proceedings. Id. at

454.

 As the Court explained, "[t]hat these plaintiffs may have

paid the attorneys' fees set forth in the leases in order to

avoid eviction does not preclude them from attempting to

challenge the fees as being so unreasonable as to violate the

CFA in a corollary proceeding." Ibid. The Court concluded

defendants might well be able to "demonstrate that the basis on

which the fees were calculated and included in the leases is

reasonable, but it will be their burden to do so." Id. at 456.

The Class Certification Motion

 Following discovery, plaintiffs sought class certification

on the single count of the complaint alleging violations of

Section 2 of the CFA.7 Plaintiffs allege defendants engaged in

affirmative misconduct by including and enforcing the $400

charge in plaintiffs' leases when defendants' actual costs for

each summary dispossess action were far less than $400. They

sought to certify a New Jersey class consisting of all tenants

of the Willows, Colonial and of any properties managed by the

7
 Following the Supreme Court's decision in this matter,
plaintiffs did not move to re-plead their Anti-Eviction Act
claim and elected not to seek class certification on their
negligent misrepresentation claim.

 10 A-1247-16T3
Morgan defendants "who were charged a legal fee for eviction"

from September 1, 2007 until the date of class certification.

 Plaintiffs presented two expert reports in support of their

motion. One by a practicing landlord-tenant lawyer regarding

the reasonableness of the $400 fee in comparison to the rates

charged by firms representing landlords in Burlington and Camden

counties, and the other by a forensic accountant who analyzed

Morgan's expenses for the eviction actions against the legal

fees charged to the tenants in order to calculate the damages

sustained by the class. Plaintiffs' attorney expert, David

Capozzi, averred the $400 fee Morgan charged its tenants well

exceeded the $110 to $150 per eviction two different local firms

charged Morgan for preparing, filing and serving tenancy

complaints and appearing on the trial date. Plaintiffs'

forensic accountant, Forensic Resolutions, Inc., calculated on

the basis of Morgan's records that Morgan incurred a cost of

between $125 to $139 per eviction, resulting in tenants being

overcharged in amounts ranging from $11 to $275 for each

eviction action.

 Defendants countered with their own joint forensic expert

report prepared by EisnerAmper LLP, comparing the attorneys'

fees charged the tenants, net of credits, against the costs of

operating Morgan's in-house legal department for the years

 11 A-1247-16T3
spanning the putative class period. Based on total fees

collected of $3,838,894 and operating expenses of $3,790,548

over the same period, EisnerAmper calculated that tenants were

overcharged a total of $48,346, or $2.17 per eviction, leading

it to conclude that the $400 charge included in the leases was

supported and consistent with the operating costs of Morgan's

legal department. At deposition, the expert testified that

using those same figures, Morgan's actual cost per eviction was

$170 and it collected, on average, $172 per eviction.

 In their briefs on the motion, the parties debated whether

plaintiff had established the Rule 4:32-1 prerequisites for

class certification, focusing largely on typicality and whether

common questions predominated over individual ones. Defendants

conceded plaintiffs' proposed class would be sufficiently

numerous to satisfy Rule 4:32-1(a)(1), but contended it was

impermissibly overbroad in that it included tenants who were

charged a $400 attorney's fee, regardless of whether they paid

anything or whether the amount paid was excessive. Defendants

further contended that many members of the proposed class left

their apartments owing rent, leaving them exposed to recoupment,

see Beneficial Fin. Co. of Atl. City v. Swaggerty, 86 N.J. 602,

609 (1981), extinguishing any sums they could recover on their

consumer fraud claims, or counterclaims for the unpaid rent.

 12 A-1247-16T3
 Plaintiffs argued in reply that their proposed class was

not overbroad because the attorney's fee charged to tenants was

"an illegal debt that is the product of fraud."8 They further

argued the court should exclude any counterclaims because "to

include [them] would result in those claims predominating the

litigation." Plaintiffs requested, in the alternative, that the

court order partial certification to permit a class wide

determination of the issue as to whether defendants had charged

excessive and illegal attorneys' fees to tenants.

 Although the parties disagreed on the reasonableness of the

fees charged, plaintiffs accepted Morgan's figures of the number

of eviction proceedings over the putative class period, the fees

Morgan charged to tenants on those occasions and the credits

Morgan awarded against those charges. From January 2007 through

September 2014, Morgan charged over 10,000 different tenants,

attorneys' fees on 22,308 different occasions. On 16,754 of

8
 Simultaneous with their class certification motion, plaintiffs
filed a motion for summary judgment on liability, arguing that
defendants' failure to have presented expert testimony by a
lawyer as to the reasonableness of the attorneys' fees charged
made it impossible for them to carry their burden of proving the
fees were reasonable. The trial court rejected that argument,
finding defendants had presented evidence of the reasonableness
of the fees through the EisnerAmper report, thereby making the
reasonableness of the fees a fact to be resolved by the jury.
We denied defendants' motion for interlocutory review of that
order.

 13 A-1247-16T3
those occasions, or 75% of the time, those fees amounted to

$400. On the 22,308 occasions Morgan charged tenants fees, it

subsequently credited the tenant's account for some or all of

the fee 10,183 times, meaning on 12,125 occasions, no credits

were awarded. The parties agree that of the 10,613 New Jersey

tenants who were charged an attorney's fee by MLM Management

through December 31, 2014, slightly over 50% (or 5319) of those

tenants left owing rent and other charges, after the application

of the security deposit. There are no figures in the record, of

which we are aware, quantifying the number of tenants who left

owing more than they were charged in legal fees.

 Although plaintiffs dispute that all of the expenses

Morgan's expert includes among the allocated costs of running

Morgan's legal department are proper, even under Morgan's

analysis there are several years in which collections of legal

fees have exceeded the department's expenses, sometimes

significantly. In 2008, for example, collections outstripped

expenses by $425,924.9 Morgan's expert arrived at its conclusion

that the legal department generated a $48,346 profit over the

9
 EisnerAmper states that "[t]he years in which collections
exceeded expenses [2008, 2009, 2010 and 2011] appear to be due
to the 2008 recession and related increase in tenant collection
and eviction issues."

 14 A-1247-16T3
putative class period by averaging the department's annual

profits and losses from 2007 through September 30, 2014. Its

conclusion that Morgan overcharged $2.17 per eviction is based

on dividing that average by 22,308, the total number of times

Morgan charged a tenant an attorney's fee over the period.

The Trial Court's Opinion

 The trial court began its analysis by addressing the

parties' dispute over plaintiffs' obligation to prove

ascertainable loss in order to establish its CFA claim and the

Supreme Court's holding that defendants bear the burden to

"demonstrate that the basis on which the fees were calculated

and included in the leases is reasonable." Green, supra, 215

N.J. at 456. The judge determined that

 the plaintiff bears the burden of
 challenging the fee provision of the lease
 agreement as an unlawful or unconscionable
 business practice under the CFA, while the
 fees actually charged to the plaintiffs – or
 the prospective class members – must be
 proven to be reasonable under the
 circumstances of each case by these
 Defendants.10

10
 Although this issue is not raised on the class certification
motion, we note the judge's allocation of the burdens of proof
is not consistent with the Court's opinion in Green. As to the
$400 lease term, the Court was clear that "[i]t may well be that
the corporate defendants can demonstrate that the basis on which
the fees were calculated and included in the leases is
reasonable, but it will be their burden to do so." Green,
supra, 215 N.J. at 456 (emphasis added). So, while the court is
 (continued)

 15 A-1247-16T3
 Analyzing the class plaintiffs initially proposed on the

motion, all tenants charged attorneys' fees under the leases,

the judge found it met none of the Rule 4:32-1(a)(1) through (4)

prerequisites for class certification, numerosity, commonality,

typicality and adequacy of representation, and that plaintiffs

could not demonstrate under Rule 4:32-1(b)(3) that common

questions of law or fact predominated and a class action was

superior to other methods for adjudicating the controversy.

 The judge rejected numerosity because "[d]efining the class

by those who were merely charged a legal fee for an eviction,

regardless of whether the tenant actually paid and ignoring

whether the particular circumstances of the fee were actually

reasonable makes for a class definition that is impermissibly

broad," and would result in "a class that contained members who

sustained no ascertainable loss and were not entitled to

recovery under the Plaintiffs' Consumer Fraud claim."

 The judge rejected commonality because "[t]he inquiry in

this case principally requires a finder of fact to determine

(continued)
correct that plaintiffs bear the burden of demonstrating the
unlawful practice they allege, because the lease term they
challenge is one based on imposition of a legal fee, the burden
of proving the reasonableness of the lease term, as well as the
actual fees they charged any particular plaintiff, is on
defendants. Ibid.

 16 A-1247-16T3
whether the fees charged to a particular plaintiff were

reasonable in order to prevail on the CFA claim." He concluded

that "those questions of fact or law that Plaintiffs assert are

common to the class would require a much too individualized

inquiry into the facts and circumstances of each class member's

eviction proceedings to merit certification." Because some

proposed class members "paid attorneys' fees to avoid eviction

[and] others did not," the judge further concluded "there may

well be no single 'typical' Plaintiff because there may well be

no 'typical' class member." He thus concluded plaintiffs failed

to meet the typicality requirement as well.

 In analyzing predominance, the judge considered plaintiffs'

argument that "common issues predominate because the central

issue to the case requires a determination that the Defendants

engaged in a common course of conduct that illegally charged

attorney's fees to the putative class" against defendants' claim

that the argument for "class certification depends less on

demonstrating a common illegal scheme perpetrated by the

Defendants, [and] more toward showing that the attorney's fees

charged to each Plaintiff were unreasonable." The judge found

"[t]he issues of liability in this case are focused on damages

assessed on an individual basis," noting that plaintiffs' own

expert conceded at deposition that "the reasonableness of the

 17 A-1247-16T3
fees assessed would have to be determined individually." He

accordingly concluded that common questions of law or fact did

not predominate over questions only affecting individual

members.

 In assessing the superiority of a class action against

other methods of adjudication, the judge focused on the

potential for counterclaims for unpaid rent against class

members. Concluding "that there may be little other alternative

for the Defendants but to bring claims against class members"

for unpaid rent under New Jersey's entire controversy doctrine,

Rule 4:30A, the judge found "[t]he addition of counterclaims

would present inefficient and unwieldy litigation." In light of

those management problems and the risk of counterclaims exposing

some number of "class members to be subject to paying the

Defendants' outstanding rent that was previously uncollected,"

the judge concluded "the class vehicle is not a superior method

of resolution in this case, and the pursuit of individual claims

and counterclaims would result in a more manageable resolution

for each case."

 Finally, although acknowledging defendants' concession that

class counsel are certainly qualified to represent the class,

the judge concluded "there is no incentive for the named

Plaintiffs to defend claims against individual class members for

 18 A-1247-16T3
unpaid rent." He thus concluded the named plaintiffs would not

adequately protect the interests of the class as required by

Rule 4:32-1(a)(4). The judge rejected plaintiffs' suggestion to

certify a "class to determine liability only, while leaving

litigation of damages to individual class members," because it

"fails to account for the later problem that those individual

class members would face in seeking a relatively small recovery

for a relatively significant expense of both time and financial

resources."

Our Analysis

 Our Supreme Court has described the class action as "a

device that allows 'an otherwise vulnerable class' of diverse

individuals with small claims access to the courthouse." Lee v.

Carter-Reed Co., LLC, 203 N.J. 496, 518 (2010) (quoting Iliadis

v. Wal-Mart Stores, Inc., 191 N.J. 88, 120 (2007)). Our courts

liberally construe Rule 4:32-1, the class action rule, in

accordance with the Court's instruction that "a class action

'should lie unless it is clearly infeasible.'" Iliadis, supra,

191 N.J. at 103 (quoting Riley v. New Rapids Carpet Ctr., 61

N.J. 218, 225 (1972)). The Court has noted that CFA claims are

particularly well suited for class treatment. See Strawn v.

Canuso, 140 N.J. 43, 68 (1995), superseded on other grounds by

statute, New Residential Construction Off-Site Conditions

 19 A-1247-16T3
Disclosure Act, L. 1995, c. 253 § 10 (codified at N.J.S.A.

46:3C-10), as recognized in, Nobrega v. Edison Glen Assocs., 167

N.J. 520, 533 (2001). Although decisions on class certification

are reviewed for abuse of discretion, Carter-Reed, supra, 203

N.J. at 504, our review of the trial court's analysis of the

legal questions underlying a decision on certification is de

novo, Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund

v. Merck & Co., Inc., 192 N.J. 372, 386 (2007).

 Applying that standard here, we agree with the trial court

that a proposed class of all tenants who were charged attorneys'

fees under the 2007 and 2010 Morgan leases is not maintainable.

The very real threat of counterclaims against class members for

unpaid rent exceeding any recovery makes a class including such

tenants impermissibly broad. See Rodriguez v. Nat'l City Bank,

726 F.3d 372, 381 (3d Cir. 2013) (observing that certification

of a class including individuals who did not experience the harm

allegedly caused by the defendants diminishes the relief for

class members who were harmed). We further agree the named

plaintiffs would have no incentive for defending counterclaims

against class members for unpaid rent and, as plaintiffs

concede, including them "would result in those claims

 20 A-1247-16T3
predominating the litigation."11 See Channell v. Citicorp Nat'l

Servs., 89 F.3d 379, 385-86 (7th Cir. 1996).

 In our view, however, defendants' counterclaims for unpaid

rent against some former tenants are not fatal to plaintiffs'

efforts to certify a class in this case. Accordingly, we review

the court's class certification analysis of plaintiffs' CFA

claim applied to the same putative class only excluding those

tenants who were evicted or quit their apartments owing more

than they were charged in legal fees.12

 Plaintiffs pursuing a CFA claim need prove only three

things: an unlawful practice, an ascertainable loss, and a

causal relationship between the two. Carter-Reed, supra, 203

N.J. at 521. A party seeking class certification of a CFA claim

must satisfy the general prerequisites for maintaining a class

action set out in Rule 4:32-1(a), as well as one of the three

11
 Although plaintiffs have argued against permitting defendants
to plead their counterclaims for unpaid rent, they offer no
rational basis for excluding such claims under the entire
controversy doctrine. See In re Cadillac V8-6-4 Class Action,
93 N.J. 412, 438 (1983) (noting "[c]ertification as a class
action does not limit a defendant's right to pursue any defense
on any of a plaintiff's claims").
12
 Plaintiffs sought certification in the trial court of this
smaller class in their brief filed in response to defendants'
arguments regarding assertion of their unpled counterclaims as
well as at oral argument on the class motion. They have
likewise continued to press for this smaller alternate in their
briefs and at oral argument in this court.

 21 A-1247-16T3
criteria enumerated in Rule 4:32-1(b)(3). Rule 4:32-1(a)

provides that:

 One or more members of a class may sue or be
 sued as representative parties on behalf of
 all only if (1) the class is so numerous
 that joinder of all members is
 impracticable, (2) there are questions of
 law or fact common to the class, (3) the
 claims or defenses of the representative
 parties are typical of the claims or
 defenses of the class, and (4) the
 representative parties will fairly and
 adequately protect the interests of the
 class.

The Rule 4:32-1(a) factors are commonly referred to as

numerosity, commonality, typicality and adequacy of

representation. Carter-Reed, supra, 203 N.J. at 519.

 Rule 4:32-1(b)(3), under which plaintiffs proceed, requires

the court to find:

 that the questions of law or fact common to
 the members of the class predominate over
 any questions affecting only individual
 members, and that a class action is superior
 to other available methods for the fair and
 efficient adjudication of the controversy.
 The factors pertinent to the findings
 include:

 (A) the interest of members of the
 class in individually controlling the
 prosecution or defense of separate actions;

 (B) the extent and nature of any
 litigation concerning the controversy
 already commenced by or against members of
 the class;

 22 A-1247-16T3
 (C) the desirability or undesirability
 in concentrating the litigation of the
 claims in the particular forum; and

 (D) the difficulties likely to be
 encountered in the management of a class
 action.

The Rule 4:32-1(b)(3) factors are commonly referred to as

predominance and superiority. Carroll v. Cellco P'ship, 313

N.J. Super. 488, 495 (App. Div. 1998).

 A class of tenants who were charged legal fees by

defendants under their leases but did not quit their apartments

owing more than those charges, represented by defendants to

number at least 5294 tenants, easily satisfies the numerosity

requirement. See In re Cadillac, 93 N.J. at 425 (finding

numerosity where number of plaintiffs is "sufficiently numerous

so that joinder is not a satisfactory alternative"). Common

questions of law and fact arise out of the uniform leases, the

legal fees charged pursuant thereto, the reasonableness of the

fee provisions in the leases and whether the $400 fee exceeded

the costs of the services. With the exception of plaintiff

Green, who would not be included in this smaller class because

she quit her apartment owing $2960.11, a sum exceeding the $2000

in legal fees she was charged by defendants over the course of

five summary dispossess actions, the claims of the named

plaintiffs "'have the essential characteristics common to the

 23 A-1247-16T3
claims of the class.'"13 See ibid. (quoting 3B James W. Moore,

et al., Moore's Federal Practice ¶ 23.06-2 (2d ed. 1982)). That

plaintiff Blumberg's aunt paid, on his behalf, the rent

remaining due when he vacated his apartment does not distinguish

his claim in our view.

 The nub of the dispute over this case proceeding as a class

action is whether plaintiffs have met their burden of proving

that common questions of law and fact predominate over

individual claims. R. 4:32-1(b)(3). In analyzing the larger,

more inclusive class, the trial judge viewed the central

question in the case as "whether the fees charged to a

particular plaintiff were reasonable." We see the case

differently.

 As we see it, the central question is whether the $400 fee

charged to all plaintiffs was reasonable or instead,

unconscionable. Or, stated differently, whether defendants'

inclusion of the $400 charge in their tenant leases,

characterized by the Supreme Court as contracts of adhesion, see

Green, supra, 215 N.J. at 454, was an unconscionable or unlawful

practice. Framing the question as the trial court did removes

the focus from the lease clause and the summary dispossess

13
 We assume plaintiffs will substitute a class representative
for Green or dismiss their claim against The Willows on remand.

 24 A-1247-16T3
proceedings. See ibid. (holding "tenants must be afforded a

forum to challenge the reasonableness of lease clauses on which

landlords rely for purposes of summary dispossess proceedings").

 The lease term is important because, as the Court has

noted, "summary dispossess litigation is an effective – and at

times coercive – mechanism for collecting rent and other fees."

Hodges v. Sasil Corp., 189 N.J. 210, 226 (2007). "If the rent

owed," here including legal fees denominated as additional rent,

"is paid 'on or before entry of judgment,' the legal proceeding

is terminated." Id. at 221 (quoting N.J.S.A. 2A:18-55). "The

tenant and landlord understand the summons and complaint to be a

demand for payment of rental arrears, a demand that prompts

defaulting tenants to pay owed rent." Id. at 227-28. As the

Court has acknowledged, the consequences of inflating the amount

due in such circumstances "can be particularly devastating when

applied to low-income tenants. The economic hardship resulting

from even a few extra dollars in late charges and attorneys'

fees may substantially impact a family's ability to survive."

Id. at 228.

 The predominance inquiry "tests whether the proposed class

is 'sufficiently cohesive to warrant adjudication by

representation'" by considering the significance of the common

questions versus the individualized questions underlying the

 25 A-1247-16T3
members' claims. Iliadis, supra, 191 N.J. at 108 (quoting

Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623, 117 S. Ct.

2231, 2249, 138 L. Ed. 2d 689, 712 (1997)). Here, resolution of

the question of whether inclusion of the $400 charge in the

leases was reasonable or was instead an unlawful practice is

central to all of the members' claims and establishes one of the

three elements of each member's case.14

 The issue on which the trial court focused, whether the

fees charged to an individual plaintiff were reasonable, no

doubt depends on individual assessments. But the issue of

whether the fees charged to an individual plaintiff were

reasonable goes to ascertainable loss and damages and only comes

into play if plaintiffs have succeeded in proving the $400 fee

included in their leases was unconscionable. See D'Agostino,

supra, 216 N.J. at 192-93 ("When an unconscionable commercial

practice has caused the plaintiff to lose money . . . that loss

14
 Indeed, it would be the same for all tenant claims of the
larger class. The common questions are the same for both
putative classes. In the larger class, however, the very real
possibility of thousands of individual counterclaims
overwhelming the common questions make that larger class not
maintainable. Cf. In re Cadillac, supra, 93 N.J. at 430 (noting
"the critical question remains whether the benefit from the
determination in a class action of the existence of a common
defect and a common pattern of fraud outweighs the problems of
individual actions involving such other issues as causation,
reliance, and damages").

 26 A-1247-16T3
can satisfy both the 'ascertainable loss' element of the CFA

claim and constitute 'damages sustained' for purposes of the

remedy imposed under the CFA."). "[P]redominance does not

require the absence of individual issues or that the common

issues dispose of the entire dispute." Iliadis, supra, 191 N.J.

at 108. The Court has made clear that "[i]ndividual questions

of law or fact may remain following resolution of common

questions." Ibid. This is especially true when remainder

issues go to damages. Id. at 112-13.

 The parties in this case have conducted extensive fact

discovery and engaged experts who have prepared comprehensive

reports directed entirely to the question of whether the $400

fee in the lease was a reasonable approximation of the fees

defendants could expect to incur in a summary dispossess action

or an unconscionable overreach. Any evidentiary questions

regarding the reliability or admissibility of those opinions and

the credibility of the experts apply uniformly to all members of

the class. A jury may appropriately consider the basis on which

the fees were calculated, whether the costs defendants include

in the operating expenses for the legal department are fairly

allocated, whether the $400 fee included in the leases is a

reasonable approximation of defendants' expected costs for a

summary dispossess action, whether defendants may base the $400

 27 A-1247-16T3
fee on its collections of fees charged instead of its costs for

services performed and whether those costs are reasonable in

comparison to the fees charged by outside lawyers for the same

work. If the jury decides the $400 lease charge is

unconscionable, it can decide what lease charge would be

reasonable.

 Although resolution of those issues may not dispose of the

litigation, in the event it does not, it will at least establish

a basis for determining whether individual class members

suffered an ascertainable loss. Using the Permenters as an

example, if the jury were to decide that the $400 fee included

in the leases was reasonable, plaintiffs could not succeed in

proving an unlawful practice, ending the litigation and binding

all class members to that result. If, on the other hand, the

jury decided the $400 lease charge was unreasonable and that a

fair charge was $200, then the Permenters, having paid $400 on

one occasion, $0 on one occasion and $200 on three occasions,

could establish an ascertainable loss of $200, subject to

defendants' ability to demonstrate that the $400 was a

reasonable fee in light of the work performed on the summary

 28 A-1247-16T3
dispossess action in which the Permenters paid a $400 fee.15 See

D'Agostino, supra, 216 N.J. at 192-93.

 Significantly, almost all of the proofs relating to the

many individual issues defendants assert must be resolved for

each class member are in defendants' possession in the form of

the tenant ledgers and other computerized records. Even though

defendants claim their costs varied from eviction to eviction,

Morgan's actual ability to demonstrate the reasonableness of the

fee charged any particular tenant is unclear in light of its

lawyers' and paralegals' failure to maintain time records.

"Although 'different factual situations may arise with respect

to the defenses as to different plaintiffs[, such] does not

derogate from the fact that the affirmative cause of action

itself has the community of interests and of questions of law or

fact which justify the class action concept.'" Iliadis, supra,

191 N.J. at 112 (quoting Branch v. White, 99 N.J. Super. 295,

310 (App. Div.), certif. denied, 51 N.J. 464 (1968)).

 Weighing the significance of the common questions, the

benefit of resolving those questions, as well as at least some

individual questions of ascertainable loss, through a class

15
 Employing the same hypothetical, Blumberg could establish an
ascertainable loss of $600, subject to defendants' ability to
demonstrate that $400 was a reasonable fee in the three summary
dispossess actions for which Blumberg paid a $400 fee.

 29 A-1247-16T3
action against alternatives, and considering the "common nucleus

of operative facts," Carter-Reed, supra, 203 N.J. at 520,

presented by the plaintiffs' challenge to a term in a uniform

lease utilized in sixty-nine apartment complexes throughout the

State, we are satisfied that the common questions predominate

over any questions affecting only individual members. R. 4:32-

1(b)(3). At the core of this case are tenants seeking to

redress a "common legal grievance," In re Cadillac, supra, 93

N.J. at 435, involving an allegedly unconscionable lease term

included in every one of their leases, making them sufficiently

cohesive to warrant adjudication through class representatives,

see Iliadis, supra, 191 N.J. at 108.

 Finally, there can be little doubt that class litigation is

"superior to other available methods for the fair and efficient

adjudication of the controversy" in this case. R. 4:32-1(b)(3).

Given the class members' "lack of financial wherewithal,"

Saldana v. City of Camden, 252 N.J. Super. 188, 200 (App. Div.

1991), and the relatively low value of the individual claims,

the likelihood of any individual tenant challenging the $400

lease charge against these defendants is remote. As in New

Rapids, "[i]f each victim were remitted to an individual suit,

the remedy could be illusory, for the individual loss may be too

small to warrant a suit or the victim too disadvantaged to seek

 30 A-1247-16T3
relief. Thus the wrongs would go without redress, and there

would be no deterrence to further aggressions." New Rapids,

supra, 61 N.J. at 225.

 In our view, this case is well suited to class treatment.

A narrowed class, drawn so as to exclude those tenants against

whom defendants could assert counterclaims overwhelming the

common claims of the class, is an appropriate vehicle to redress

what the plaintiffs claim are systemic illegal lease charges to

over 5000 tenants in this State.

 Although it is likely that individual issues will remain

following resolution of the common questions, posing some

management challenges, the issues here are not nearly so

complicated as those posed in either Iliadis or In re Cadillac.

The Law Division has the ability "to craft remedies and

procedures to address the peculiar problems of class

litigation," by altering, amending or even decertifying a class

if necessary. Iliadis, supra, 191 N.J. at 119-20; see also R.

4:32-2(a). "Class actions by their very nature are complicated

creatures, but they provide an efficiency of scale and an

equitable means of relief for individuals who might otherwise

not have access to the courthouse or the incentive or ability to

right a wrong." Carter-Reed, supra, 203 N.J. at 530.

 31 A-1247-16T3
 Although we agree with the trial court that the larger

class plaintiffs proposed was not maintainable in accordance

with Rule 4:32-1(a) and (b), we conclude the smaller, more

narrowly defined class plaintiffs offered in the alternative

should be certified. Accordingly, we vacate the order denying

class certification and remand for certification of a class in

conformity with this opinion.

 Vacated and remanded. We do not retain jurisdiction.

 32 A-1247-16T3