**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1107-23

DESPINA ALICE CHRISTAKOS
and HELEN ALEXANDRA
CHRISTASKOS,

    Plaintiffs-Respondents,

v.

ANTHONY A. BOYADJIS, ESQ.,

    Defendant-Appellant.

_____

> Argued April 24, 2024 – Decided December 5, 2024
>
> Before Judges Vernoia and Walcott-Henderson.
>
> On appeal from an interlocutory order of the Superior Court, Law Division, Morris County, Docket No. L-0059-20.
>
> Maximilian J. Mescall argued the cause for appellant (Mescall Law, PC, attorneys; James C. Mescall, of counsel; Maximilian J. Mescall, on the briefs).
>
> Michael J. Paragano argued the cause for respondent (Nagel Rice, LLP, attorneys; Jay J. Rice and Michael J. Paragano, of counsel and on the brief).

The opinion of the court was delivered by

VERNOIA, P.J.A.D.

By leave granted, defendant Anthony A. Boyajdis appeals from orders denying his motions for summary judgment on plaintiffs Despina Alice Christakos's and Helen Alexandra Christakos's legal malpractice claim and for reconsideration of the order denying his summary judgment motion. Defendant argues the court erred by: rejecting his contention plaintiff could not sustain their legal malpractice claim because plaintiffs had never been his clients and he therefore did not owe any duty to them; finding plaintiffs were not judicially estopped from asserting he breached a legal duty owed to them based on the entry of a consent order in a related probate matter; and finding there were disputed issues of material fact precluding summary judgment based on his claim defendant's alleged malpractice proximately caused their alleged damages. Based on our de novo review of the record, the parties' arguments, and the applicable law, we affirm in part, reverse in part, and remand for further proceedings.

I.

We summarize the undisputed facts viewed most favorably to plaintiffs as the parties who opposed defendant's summary judgment motion. <u>Brill v.</u>

<u>Guardian Life Ins. Co. of Am.</u>, 142 N.J. 520, 540 (1995).  Defendant is an attorney in New Jersey who practices estate planning.  In July 2017, Helen emailed defendant asking if he could help her uncles, Peter Christakos and Nicholas Christakos, "get their affairs in order," noting they may "want to re-do their wills."[1]  She explained that eighty-seven-year-old Peter was "highly intelligent" and lived with ninety-six-year-old Nicholas, who suffered from dementia and was hard of hearing.  She noted the brothers had never married, did not have children, and relied on neighbors to bring them food and supplies.  Helen said she would be "happy to help facilitate . . . communication or be[] a trustee . . . if that's what they want."  Otherwise, she was "fine being kept out of the loop if that's what they prefer[red]."

A week later, defendant visited the brothers at their home.  Peter showed defendant his then-extant January 17, 2003 will and explained Nicholas had a mirror-image will that had been executed on the same date (the 2003 wills).  In Peter's 2003 will, he had left his entire estate to Nicholas and, if Nicholas predeceased him, Peter left this estate in equal shares to his two other brothers

---

[1]  For ease of reference and clarity we will use first names to refer to plaintiffs Despina Alice Christakos and Helen Alexandra Christakos, as well as decedents Peter Christakos and Nicohlas Christakos, because they share the same surname. We intend no disrespect in doing so.

per stirpes. If either of those brothers "die[d] without issue," that brother's share would pass to the "surviving brother, or their issue, if applicable." As noted, Nicholas's 2003 will was a mirror image of Peter's, with the only difference being that Nicholas left his entire estate to Peter in the first instance.

The 2003 wills did not make any provision for Despina, who is Helen's mother and Peter's and Nicholas's sister-in-law. In the 2003 wills Helen was designated as the fourth alternate executor and was otherwise a potential beneficiary as the child of James Christakos, who was one of Peter's and Nicholas's three other brothers.

When Peter and defendant first met, Peter explained that he and Nicholas had outlived their remaining siblings and questioned what would happen if one brother were to predecease the other. Defendant incorrectly advised Peter that according to the 2003 wills, the children of their deceased siblings would become the beneficiaries. That advice was incorrect because under the 2003 wills, if one of the two surviving brothers predeceased the other, the deceased brother's estate would pass to the surviving brother.

During the discussion, Peter was adamant that his nieces and nephews should not inherit anything. Accordingly, Peter asked defendant to draft new

wills for himself and Nicholas[2] so that the surviving brother would be the primary beneficiary of their respective estates, although he was unsure who he wanted to designate as the beneficiary of an alternate residuary bequest. According to defendant, Peter also asked him to serve as executor of the new wills.

On November 20, 2017, defendant again visited the brothers to further discuss their new wills. Peter expressed a strong desire to disinherit his nephews and nieces and considered alternative residuary bequests in equal shares to the brothers' neighbor, a church, and Despina. But Peter indicated that he wanted to consider the issue further.

In January 2018, defendant received an urgent call from Peter who, along with Nicholas, had been admitted to the hospital. Peter implored defendant to prepare the new wills immediately, explaining the sole beneficiary of the estate brothers' respective wills should be the surviving brother and the alternate residuary bequest should be split equally among their neighbor, the church, and Despina.

---

[2] Although Nicholas was present at the meeting between Peter and defendant, and at subsequent meetings, defendant rarely communicated directly with about Nicholas's intentions.

A-1107-23

Defendant prepared a new will for each of the brothers and later met with each at the hospital. On January 3, 2018, Peter executed the new will defendant had drafted. Peter's 2018 will, however, did not devise his entire estate to Nicholas as Peter had requested and intended. Instead, the will devised only Peter's personalty to Nicholas and devised the remainder of the estate in equal shares to Despina, the neighbor, and the church. The 2018 will named defendant executor of Peter's estate.

On January 3, 2018, Nicholas did not execute his 2018 will. Defendant did not present the will to Nicholas for execution because Nicholas was unable to communicate, was non-responsive, and did not have the capacity to execute the will that day.

On April 7, 2018 Nicholas executed the 2018 will, which included the same error in Peter's will. Again, the will did not devise Nicholas's entire estate to Peter but instead devised only Nicholas's personalty to Peter, with the balance of his estate devised in equal shares to Despina, the neighbor, and the church. In his 2018 will, Nicholas designated defendant as the executor of his estate. Nicholas also executed a power of attorney granting defendant authority to act on his behalf.

6

While the brothers were in the hospital, the Passaic County Adult Protective Services Unit began an investigation to determine whether Nicholas required a guardianship. Two doctors issued reports recommending a guardianship because they had found Nicholas had "moderate to severe cognitive impairment" and was incapable of managing his own affairs.

Peter passed away on April 11, 2018. In the days following Peter's death, defendant spoke with Despina, reviewed Peter's 2018 will, and advised her that she would inherit under the will. As noted, although the wills accurately stated the surviving brother would receive the personalty of the other, the wills did not, as Peter had intended, provide for the entirety of his estate to pass to Nicholas. Thus, apart from his personalty, Peter's 2018 will left the three alternate residuary beneficiaries equal shares of the remainder of his estate.

Despina advised defendant she believed there must be an error because that "was not what Peter [had] intended and . . . she did not want any money because she wanted [Nicholas] to be taken care of." Despina explained that defendant told her "Peter and [Nicholas] were not close and Peter did not intend for his estate to be left to [Nicholas]." However, defendant later admitted to a scrivener's error in his preparation of the wills.

7

Helen filed a caveat challenging Peter's 2018 will for the purpose of ensuring that Nicholas was designated as the sole beneficiary of Peter's entire estate. Simultaneous with the proceedings challenging Peter's will, guardianship proceedings for Nicholas had commenced, and defendant was considered as his Nicholas's potential guardian. However, Bruce Glatter, a social worker assigned to Nicholas's case, submitted a certification to the court expressing concern over "the appropriateness of [defendant's] appointment" as Nicholas's guardian because defendant had prepared Nicholas's will in which defendant was appointed executor and the power of attorney "despite the fact that Nicholas had been suffering from dementia for several months." Glatter expressed concern Nicholas's 2018 will had "left nothing" to Peter, despite Peter having told Glatter it was the brothers' intentions to leave their estates to each other.

In July 2018, defendant filed an order to show cause and verified complaint seeking reformation of Peter's will to accurately reflect Peter's testamentary intent. The complaint sought entry of a final order: appointing defendant as executor of Peter's estate; reforming Peter's 2018 will to provide that Peter's entire estate would be devised to Nicholas; admitting the proposed reformed 2018 will to probate; and dismissing Helen's caveat.

 A-1107-23

In the guardianship proceedings, the court appointed an interim administrator of Nicholas's estate who met with Nicholas, his neighbors, his caretakers and aides, defendant, and plaintiffs. The administrator submitted a report concluding Nicholas lacked capacity to manage his affairs and therefore required a guardian. The administrator explained that she had met with Nicholas, he could not remember who defendant was but made it "very clear that he did not want his family . . . involved in his life or in his home and especially not his finances" because "they wanted his money."

Nicholas's neighbors recalled the brothers "speaking negatively about their extended family" and being "adamant that they didn't want family involved in their financial and personal affairs." Plaintiffs, however, advised the interim administrator that they strongly believed a family member should be appointed as Nicholas's guardian, citing fears that fraud and theft had occurred "and must be uncovered." The administrator concluded that an independent person or entity should be appointed as Nicholas's guardian because the power of attorney had been "executed under suspicious circumstances" and Nicholas had clearly expressed that he did not want Helen or other family members to be involved in his affairs.

A-1107-23

On October 2, 2018, Nicholas passed away. Less than a week later, Helen filed a caveat opposing the admission of Nicholas's 2018 will to probate. On November 21, 2018, defendant filed an order to show cause and verified complaint to probate Nicholas's 2018 will and for reformation of the will in the same manner he had requested in the action he had filed concerning Peter's will. The complaint alleged that defendant believed Nicholas had the necessary testamentary capacity when he signed the 2018 will and sought reformation of the will, dismissal of Helen's caveat, and admission of the reformed will to probate.

Helen filed an answer to the complaint, asserting Nicholas did not have testamentary capacity when he executed the 2018 will and it therefore did "not reflect Nicholas's last wishes in material and substantial ways" because it had devised only Nicholas's personalty to Peter. Helen sought: denial of the defendant's request for admission of the 2018 will to probate; her appointment as executrix of Nicholas's estate; dismissal of defendant's complaint with prejudice; leave to assert counterclaims against defendant; an order compelling the testimony of the witnesses to Nicholas's execution of the will; and an award of costs and expenses.

During the Probate Part actions concerning Peter's and Nicholas's separate estates, the court appointed attorney Peter F. Weiss as "Administrator Pendente Lite" of the estates. On January 18, 2023, the court entered a consent order, resolving the Probate Part matters.

In pertinent part, the consent order: directed payments of $100,000 to the neighbor and church referenced in the wills; directed payments to the Administrator Pendente Lite of the estates; denied defendant's requests to be appointed as the executor of the estates; and appointed Helen as the Administrator C.T.A. of the estates. The order also provided that Despina was the sole residuary beneficiary of each estate, and the summary judgment record establishes that she received over $700,000 from the estates as a result. The consent order also admitted to probate Peter's and Nicholas's 2018 wills as modified by the court's order.

The order further provided that Peter's and Nicholas's claims or causes of action against defendant were assigned and transferred to Helen. The order also "specifically preserved" what is described as "Helen's unfettered right to assert claims against [defendant] on her behalf, [Despina's] behalf, and/or [Peter's and Nicholas's] behalves."

11

Plaintiffs, solely in their individual capacities and not on behalf of Peter, Nicholas, or their estates, later filed a complaint alleging legal malpractice against defendant. They alleged Despina had suffered damages based on a "diminution of the estate, due to penalties and expenses, [defendant's] executor fees and $200,000[] paid to the neighbors and church," and Helen had suffered damages in the form of "out of pocket litigation costs including attorney's fees for probate, guardianship and [the] malpractice case of approximately $429,467.57 as well as ongoing attorney's fees which at present are approximately $145,071.74."

Plaintiffs alleged defendant had engaged in legal malpractice by: failing to obtain a signed retainer agreement from Peter and Nicholas; incorrectly advising Peter that his 2003 will had devised his estate to his nieces and nephews thereby prompting Peter to execute the 2018 will; negligently preparing Peter's 2018 will in a manner inconsistent with his testamentary intent; and negligently preparing Nicholas's 2018 will because Nicholas had lacked testamentary capacity.

Following discovery, defendant moved for summary judgment, arguing plaintiffs could not sustain their burden of proving legal malpractice because: he did not owe plaintiffs a duty because they were nonclients; plaintiffs were

12

judicially estopped from taking contradictory positions in the probate and legal malpractice actions; and there was no proximate cause between defendant's alleged errors and plaintiffs' claimed damages.

The court denied defendant's motion, finding defendant owed plaintiffs a duty "and the issue of breach, proximate cause, and damages is a question of fact for the jury to decide." Defendant moved for reconsideration of the order denying the summary judgment motion. The court denied the motion, finding it simply reprised arguments the court had rejected in the first instance.

Defendant moved for leave to appeal from the court's orders. We granted defendant's motion. Defendant presents the following arguments for our consideration:

POINT I:

THE COURT BELOW ERRED WHEN DENYING THE SUMMARY JUDGMENT AND RECONSIDERATION MOTIONS, THEREBY ALLOWING NON-CLIENT PLAINTIFFS TO CONTINUE TO PURSUE A LEGAL MALPRACTICE CLAIM AGAINST [DEFENDANT].

A. Case Law Has Refined the "Foreseeability Test" in Probate Actions, Because Otherwise All Estate Attorneys Owe All Potential Heirs A Duty Which Would Open All Probate Attorneys to Legal Malpractice Claims from All Potentially Disgruntled Heirs.

13

B. Plaintiffs are Judicially Estopped From Asserting That [Defendant] Misinterpreted The Decedent's Intent When Drafting the 2018 Wills, Because They Probated Those Wills.

C. Plaintiffs Cannot Establish Proximate Cause For Their Damages, Because Non-Clients Are Not Permitted to Seek Legal Fees In A Malpractice Action, Their Sole Damages Are Legal Fees From The Probate Action, and Those Fees Would Not Have Accrued If They Had Not Intervened.

## II.

We conduct a de novo review of the denial of a summary judgment motion, applying the same standard that governs the trial court. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). We determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill, 142 N.J. at 536). We must draw "all legitimate inferences from the facts" in favor of the non-moving party, R. 4:46-2(c); Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016), but "summary judgment should be granted . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party

14

will bear the burden of proof at trial,'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

Where a defendant moves for summary judgment based on the contention that the plaintiff lacks evidence sufficient to sustain a claim, analysis of the motion begins by "identifying the elements of the cause of action and the standard of proof governing th[e] claim." Bhagat v. Bhagat, 217 N.J. 22, 39 (2014). Defendant moved for summary judgment on plaintiffs' cause of action for legal malpractice, which is a claim "grounded in the tort of negligence.'" Nieves v. Off. of the Pub. Def., 241 N.J. 567, 579 (2020) (quoting McGrogan v. Till, 167 N.J. 414, 425 (2001)).

To prove a legal-malpractice claim a plaintiff must establish "three essential elements: '(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff.'" Morris Props., Inc. v. Wheeler, 476 N.J. Super. 448, 459 (App. Div. 2023) (quoting Jerista v. Murray, 185 N.J. 175, 190-91 (2005)). A plaintiff must "establish those elements by some competent proof." Ibid. (quoting Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014)).

In part, defendant moved for summary judgment based on the contention plaintiffs lacked evidence he owed a legal duty to them because they were not his clients. He contends the undisputed facts establish he served only as Peter's and Nicholas's attorney, plaintiffs were never his clients, and the court therefore erred as a matter of law by finding he owed plaintiffs a legal duty that supports their malpractice claim.

"It is well settled that whether a party owes a duty to another party is a question of law for the court to decide . . . ." Rivera v. Cherry Hill Towers, LLC, 474 N.J. Super. 234, 240 (App. Div. 2022); see also Davin, L.L.C. v. Daham, 329 N.J. Super. 54, 73 (App. Div. 2000). Generally, the existence of an attorney-client relationship creates a duty that is "essential to the assertion of a cause of action for legal malpractice." Froom v. Perel, 377 N.J. Super. 298, 310 (App. Div. 2005). However, an attorney may owe a duty to a non-client "in limited circumstances." Innes v. Marzano-Lesnevich, 435 N.J. Super. 198, 213 (App. Div. 2014).

A determination of whether an attorney's "duty extends to non-clients is 'necessarily fact-dependent,'" Est. of Albanese v. Lolio, 393 N.J. Super. 355, 368 (App. Div. 2007) (quoting Est. of Fitzgerald v. Linnus, 336 N.J. Super. 458, 473 (App. Div. 2001)), depends on "the circumstances presented," ibid., and "is

not to be considered in a vacuum but with reference to the type of service the attorney undertakes to perform, ibid. (quoting Est. of Fitzgerald, 366 N.J. Super. at 467-68).

Our Supreme Court has held that the "grounds on which any plaintiff may pursue a malpractice claim against an attorney with whom there was no attorney-client relationship are exceedingly narrow" and have been "carefully circumscribed." Green v. Morgan Properties, 215 N.J. 431, 458 (2013); see also LoBiondo v. Schwartz, 199 N.J. 62, 101 (2009) (noting "the absence of a direct relationship between an attorney and a nonclient ordinarily negates the existence of a duty and, by extension, affords no basis for relief"). For example, circumstances that may support a finding an attorney owes a duty to exercise reasonable care to a non-client include those where "the attorneys know, or should know, that non-clients will rely on the attorney's representations and the non-clients are not too remote from the attorney's to be entitled to protection." Petrillo v. Bachenberg, 139 N.J. 472, 483-84 (1995).

Application of the principles explained in Petrillo "has engaged courts in evaluating whether the attorney invited a non-client's reliance." Banco Popular North Am. v. Gandi, 184 N.J. 161, 181 (2005). A determination of whether an attorney owes a duty to a nonclient requires an "inquiry . . . which balances 'the

17

relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.'" Id. at 179 (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993)). And, as the Court has explained, "[i]f the attorney's actions are intended to induce a specific non-client's reasonable reliance on [the attorney's] representations, then there is a relationship between the attorney and the third party" supporting a finding of a duty, which, if breached, supports a legal malpractice claim. Id. at 180.

We have recognized additional circumstances permitting a determination that an attorney owes a duty to a non-client that is not dependent on the non-client's reliance on the attorney's actions. In Estate of Albanese v. Lolio we explained that "[p]rivity between an attorney and a non-client is not necessary for a duty to attach 'where the attorney had reason to foresee the specific harm that occurred.'" 393 N.J. Super. at 368-69 (quoting Albright v. Burns, 206 N.J. 625, 633 (App. Div. 1986)).

In Pivnick v. Beck, we observed that some states preclude a beneficiary under a will from asserting a legal malpractice claim against the attorney who drafted the will "based upon the lack of privity between the lawyer and the non-client beneficiary," but we explained that "[i]n New Jersey, such a lack of privity

argument in malpractice actions brought by beneficiaries would have little currency." 326 N.J. Super. 474, 482 (App. Div. 1999) (citing Petrillo, 139 N.J. at 483-84), aff'd, 165 N.J. 670, 671 (2000). In Pivnick we further rejected the defendant-attorney's claim that legal malpractice claims brought by putative beneficiaries of a trust against the attorney who prepared the trust documents should be limited to only those involving "a lawyer's negligence inhibiting the expressed intent of the testamentary document." Id. at 483. We deemed such a limitation "a drastic course" that "may eliminate worthy suits and cause injustice. Ibid. Thus, we recognized that an attorney who drafts a testamentary document that is inconsistent with the decedent's intent breaches a legal duty owed to a beneficiary who claims they are damaged as a result of the attorney's error.[3]

---

[3] In Pivnick we also addressed an issue that is not pertinent here based on the summary judgment record—protecting the sanctity of a testamentary document in a legal malpractice suit in which it is claimed the attorney erred by drafting the document in a manner inconsistent with the decedent's intent. Id. at 484-85. We held that to protect the sanctity of the document and the standards applicable to obtaining a reformation of such a document, a putative beneficiary who sues the attorney-drafter of the document for malpractice must present clear and convincing evidence establishing the document does not reflect the decedent's intent. Id. at 485. Our holding concerning the burden of proof applicable to such a legal malpractice claim is not an issue based on the summary-judgment record because defendant concedes he erred in drafting wills that did not reflect Peter's and Nicholas's testamentary intent. As such, based on the motion record,

The Supreme Court affirmed our holding in <u>Pivnick</u> "substantially for the reasons stated in [our] opinion." 165 N.J. at 671. The Court also "add[ed] one additional source of authoritative support" for our holding, explaining the "<u>Restatement (Third) of the Law Governing Lawyers</u> § 51(3)(a) (Am. Law Inst. 1998)" provided that "a lawyer owes a duty of care 'to a nonclient . . . when the lawyer knows that a client intends as one of the primary objectives of the representation that the lawyer's services benefit the nonclient.'"[4] <u>Ibid.</u>

The duty an attorney owes to a nonclient that the Court in <u>Pivnick</u> found in the <u>Restatement (Third) (1998)</u> remains in the current version.[5] The <u>Restatement (Third) of the Law Governing Lawyers</u> § 51(3) (Am. Law Inst. 2000) provides that a lawyer owes a duty of care:

---

there is clear and convincing evidence defendant erred in drafting the wills and that the wills did not reflect decedents' intent.

[4] The Court also cited to comment f to Section 51 of the <u>Restatement (Third) (1998)</u>, noting that consistent with our holding <u>Pivnick</u>, where the attorney did not "exercise care in preparing a document, such as a will, for which the law imposes formal or evidentiary requirements, the third person must prove the client's intent by evidence that would satisfy the burden of proof applicable to construction or reformation (as the case may be) of the document." <u>Ibid.</u> (quoting <u>Restatement (Third) (1998)</u> § 51 cmt. f).

[5] "The <u>Restatement (Third) of The Law Governing Lawyers</u> was adopted by the American Law Institute in 1998 and published in 2000." <u>Banco Popular</u>, 184 N.J. at 179 n.7.

to a nonclient when and to the extent that: (a) the lawyer knows that a client intends as one of the primary objectives of the representation that the lawyer's services benefit the nonclient; (b) such duty would not significantly impair the lawyer's performance of obligations to the client; and (c) the absence of such a duty would make enforcement of those obligations to the client unlikely.

[Restatement (Third) (2000) § 51(3).]

Comment f to Section 51(3) of the Restatement (Third) (2000) includes an illustration of an application of the principles set forth in the Subsection (3). The illustration provides:

Client retains Lawyer to prepare and help in drafting and execution of a will leaving Client's estate to Nonclient. Lawyer arranges for Client to sign the will before the proper number of witnesses, but Nonclient later alleges the Lawyer negligently wrote the will to name someone other than Nonclient as the legatee. Client's intent to benefit nonclient thus does not appear on the face of the will. Nonclient can establish the existence of a duty from Lawyer to Nonclient only by producing clear and convincing evidence that Client communicated to Lawyer Client's intent that Nonclient be the legatee.

[Restatement (Third) (2000) § 51(3) cmt. f, illus. 2.]

Measured against the foregoing principles, we affirm the court's determination defendant owed Despina a duty to correctly draft Peter's will such that when he passed away the entirety of his estate—and not just his

21

personalty—was devised to Nicolas and to correctly draft Nicholas's will to reflect that if Peter did not survive him, the entirety of his estate was devised in equal shares to Despina, the neighbor, and the church.  We recognize Despina did not present evidence establishing she had relied on any action, advice, or communication supporting a finding defendant owed her a duty under the Petrillo standard.  139 N.J. at 474; see also Banco Popular, 184 N.J. at 180-81.

However, we find defendant owed Despina a duty to prepare the wills in accordance with Peter's and Nicholas's intentions because defendant had been requested to draft wills that were intended to benefit Despina and the other beneficiaries in the precise manner the decedent brothers had intended.  Thus, defendant owed a duty to Despina because defendant "had reason to foresee that the specific harm"—the loss of her entitlement to her rights as beneficiary in accordance with the decedent's intentions—claimed by Despina as result of defendant's errors.  See Est. of Albanese, 193 N.J. Super. at 368-69.  Defendant also owed Despina the identical duty we found, and the Supreme Court found, was due to the plaintiff in Pivnick, see 165 N.J. at 671; 326 N.J. Super. at 482-83, and is described in the Restatement (Third) (2000) § 51(3).[6]  The court

_____

[6] Although unnecessary to our determination defendant owed a duty to Despina, we agree with the motion court's analysis of factors we found in Stewart v.

therefore correctly rejected defendant's claim he was entitled to summary judgment on Despina's legal malpractice claim based on any purported lack of a duty.

The court, however, erred by similarly finding defendant owed a duty to Helen that supported her legal malpractice claim. Like Despina, Helen was never defendant's client and she did not present evidence supporting a finding defendant owed her a duty based on a claim she had relied on any advice, information, or other actions of defendant. See Petrillo, 139 N.J. at 474; see also Banco Popular, 184 N.J. at 180-81. Other than referring Peter and Nicholas to defendant and her involvement in arranging defendant's introduction to them

---

Sbarro are pertinent to whether an attorney owes a duty to a nonclient. 142 N.J. Super. 581, 593 (App. Div. 1976). The transaction—defendant's drafting of the wills—was intended to benefit Despina as a beneficiary; it was foreseeable an error in drafting the wills in a manner inconsistent with Peter's and Nicholas's intentions would harm Despina; it was certain Despina would suffer harm if she did not obtain the full benefits of Peter's and Nicholas's intentions; and there is a close connection between defendant's errors and the harm Despina claims she suffered as a result of defendant's errors. See ibid. Although we are not persuaded the evidence establishes that any moral blame is attached to defendant's actions, a balancing of the factors, and the policy underlying the imposition of a duty to prevent future harm to beneficiaries of wills who are deprived of the full benefit of a testator's intention, support a finding defendant owed a duty of reasonable care in his preparation of the wills to Despina. See ibid. The court correctly rejected defendant's claim he was entitled to summary judgment on Despina's legal malpractice claim on that basis.

23

as potential clients, Helen never retained defendant to provide legal services to her, communicated with him for the purpose of obtaining legal advice, or received any information, documents, or advice from defendant on which she could or did rely.

The record is also bereft of evidence that like Despina, Helen was an intended beneficiary in decedents' 2018 wills. Thus, unlike Despina, there is no evidence supporting a claim that defendant's alleged negligence in drafting the wills deprived Helen of a benefit to which she would have been entitled but for defendant's alleged errors. Thus, her malpractice claim is not founded on the duty recognized in Pivnick or prescribed in the Restatement (Third) (2000). 165 N.J. at 671; 326 N.J. Super. at 482-83. Nor does the record support a finding that defendant should have foreseen any injury to Helen resulting from the errors he made in drafting the wills. See Est. of Albanese, 393 N.J. Super. at 368-69 Indeed, the undisputed evidence established that in 2018 neither Peter nor Nicholas wanted their nieces and nephews to share in their estates. Thus, even if defendant had not erred, Helen would not have been a beneficiary of either Peter's or Nicholas's estates.

Helen claims defendant owed a duty to her because he had misadvised Peter about the manner in which their estates would have been distributed under

their 2003 wills. She further claims that but for defendant's incorrect advice about the 2003 wills, decedents would not have executed the 2018 wills. Any incorrect advice defendant may have given about the 2003 wills was given to Peter, not Helen, and there is no evidence that Helen relied on it in such a manner as to support a legal malpractice claim by her, as a nonclient, against defendant under the <u>Petrillo</u> standard. 139 N.J. at 474; <u>see also</u> <u>Banco Popular</u>, 184 N.J. at 180-81.

Moreover, any claim that Peter and Nicholas decided in 2018 to change in their wills and devise their estates first to each other, and then to Despina, the neighbor, and church based on defendant's erroneous advice about the 2003 wills is based on pure conjecture. What is undisputed is that irrespective of Peter's and Nicholas's motivations for changing their wills in 2018, they did not intend to appoint Helen as the executor of their estates and they did not intend that she receive any portion of their estates as a beneficiary. Thus, Helen did not establish defendant owed her a duty under <u>Pivnick</u> or the <u>Restatement (Third) (2000)</u>.

We also disagree with the court's analysis of the <u>Stewart</u> factors in its assessment of defendant's duty in their application to Helen's legal malpractice claim. 142 N.J. Super. at 593. Peter's and Nicolas's retention of defendant to

prepare the 2018 was not intended to benefit Helen as a beneficiary or otherwise, and therefore it was not foreseeable that any error by defendant related to the wills would harm Helen. To the contrary, and as noted, Peter and Nicholas had made clear they did not want their nieces or nephews to share in their estates and therefore it was not foreseeable that any purported errors by defendant would harm Helen. See ibid. Again, we are not persuaded the evidence establishes any moral blame attendant to defendant's actions, and in balancing the factors, we find no evidence supporting a finding defendant owed a duty to Helen.

For those reasons, we find no basis in the evidence supporting Helen's claim defendant owed her a duty as non-client such that she could sustain her burden of proving defendant breached a duty of care owed to her. We reverse the court's order denying defendant's motion for summary judgment on Helen's claim and direct entry of an order granting summary judgment to defendant on the claim.

We next address defendant's remaining arguments as they pertain to Despina's legal malpractice claim. We note, however, that for purposes of completeness, our determinations as to the remaining arguments would otherwise apply to Helen's claim.

26

Defendant claims he was entitled to summary judgment because plaintiffs' legal malpractice claim is founded on the contention that he "misinterpreted the decedents' intentions when drafting the 2018 [w]ills." Defendant argues plaintiffs are judicially estopped from asserting that the wills did not reflect the decedent's intentions because plaintiffs agreed to entry of the consent order in the Probate Part matters admitting the 2018 wills to probate. He claims the court erred by rejecting his reliance on the doctrine as a basis for his contention he was entitled to summary judgment.

We review a trial court's decision concerning the application of the doctrine of judicial estoppel for an abuse of discretion. In re Declaratory Judgment Actions Filed by Various Muns., Cnty. of Ocean, 446 N.J. Super. 259, 291 (App. Div. 2016). "The doctrine of judicial estoppel operates to 'bar a party to a legal proceeding from arguing a position inconsistent with the one previously asserted,'" Cummings v. Bahr, 295 N.J. Super. 374, 385 (App. Div. 1996) (quoting N.M. v. J.G., 255 N.J. Super. 423, 429 (App. Div. 1992)), and provides that "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position . . . ," ibid. quoting (Newell v. Hudson, 376 N.J. Super. 29, 38 (App. Div. 2005)). The doctrine

protects "the integrity of the judicial process," Kimball Int'l, Inc. v. Northfield Metal Prods., 334 N.J. Super. 596, 607 (App. Div. 2000) (quoting Eagle Found., Inc. v. Dole, 813 F.2d 798, 810 (7th Cir. 1987)), and "is designed to prevent litigants from 'playing fast and loose with the courts,'" Tamburelli Props. Ass'n v. Borough of Cresskill, 308 N.J. Super. 326, 335 (App. Div. 1998) (quoting Scarano v. Cent. R.R. Co., 203 F.2d 510, 513 (3d Cir. 1953)).

We find no basis in the record supporting a finding the court abused its discretion by rejecting defendant's reliance on the doctrine of judicial estoppel as grounds for granting summary judgment on the legal malpractice claim. Defendant argues plaintiffs have taken conflicting positions by "asserting in the probate action that the modified 2018 [w]ills reflected decedents' intent, while arguing" in support of their legal malpractice claim that defendant "frustrated their intent by drafting the 2018 [w]ills."

We reject defendant's argument because it ignores that plaintiffs' malpractice claim is founded on the contention that the 2018 wills were drafted in error. They do not contend the 2018 wills, as modified during the probate cases and as reflected in the consent order, were entered in error. Plaintiffs argued in the probate actions that defendant erred in drafting the wills—indeed, Helen filed caveats based on that precise claim—and defendant admitted the

error in the probate action by seeking modification of the wills. The fact that the consent order corrected the errors, and plaintiffs agreed to its entry, does not establish anything other than plaintiffs correctly argued in the probate cases, as they assert in this one, that defendant erred by drafting the two wills in a manner not in accord with Peter's and Nicholas's intentions. Thus, there is no evidence that either plaintiff has taken in this action a position here different than one they had taken and prevailed on in the probate cases.

Additionally, the summary-judgment record lacks any evidence plaintiffs have taken any action that is inconsistent with the integrity of the judicial system or have "play[ed] fast and loose" with the court. To the contrary, in addition to consistently arguing in both proceedings that defendant erred in drafting the 2018 wills, the consent order states directly that Helen and Despina had reserved their rights to pursue their personal claims against defendant. Most simply stated, there is nothing in the evidence presented by defendant supporting an application of the doctrine of judicial estoppel as a bar to the legal malpractice claim against defendant. The court did not abuse its discretion by rejecting defendant's argument to the contrary.

We find defendant's remaining argument, that the court erred by rejecting his claim that plaintiff had failed to present sufficient evidence establishing

Despina suffered damages proximately caused by defendant's alleged negligence, to be without sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E). We note only that we agree with the motion court that the record presented reveals genuine issues of material fact precluding summary judgment based on defendant's claim.

Our disposition of defendant's arguments concerning the summary judgment order render it unnecessary to address defendant's claim the court erred by denying his motion for reconsideration.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1107-23